Earl Kevan SOUTHWICK, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–00166–CR

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 1985.

Gerald E. Hopkins, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Calvin A. Hartmann, Mike Tiffin, Harris Co. Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

A jury found the appellant guilty of the promotion of obscene devices in violation of Tex.Penal Code Ann. sec. 43.23 (Vernon Supp.1985) and assessed his punishment at 6 days confinement and a $750 fine. We affirm.

In August 1984, two Houston police officers entered a newsstand in southwest Houston. The police officers proceeded to the rear section of the newsstand, where sexually explicit material was sold. There, the officers observed the appellant standing behind a glass counter in which some 47 obscene devices were openly displayed. The officers observed the appellant, who was the only employee in the store, make several sales of magazines. Then, without making a purchase, the officers arrested the appellant for promotion of obscene devices and seized all of the obscene devices contained in the glass counter. The officers did not have a warrant for the appellant's arrest or for the search and seizure of the contraband.

A person commits an offense under Tex. Penal Code Ann. sec. 43.23(c)(1) if, knowing its content and character, he promotes any obscene device. A person possessing six or more obscene devices is presumed to possess them with intent to promote. Section 43.23(f). The term "promote" includes the offering and exhibiting of obscene devices for sale. Section 43.21(a)(5). The term "obscene device" is defined as "a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." Section 43.21(a)(7).

The appellant was charged by information with possessing, with intent to sell, six obscene devices, described in the indictment as three "auto sucks" and three "penis pumps." At trial, the officers testified about the use of each device, basing their testimony on their experience in the vice division of the Houston Police Department, and upon knowledge gained from having viewed magazine advertisements regarding

the use of such devices. The appellant presented no evidence on his own behalf.

The appellant first contends that the trial court erred in denying his motion to suppress, challenging the legality of the warrantless search, seizure, and arrest. He argues that obscene devices are within the ambit of the first amendment of the United States Constitution, and that because such devices are constitutionally protected, there must have been a prior judicial determination that the devices were probably obscene.

■ We conclude, contrary to the appellant's contention, that "obscene devices" are not within the constitutional protection afforded by the first amendment. We base our conclusion largely on the holding of the Texas Court of Criminal Appeals in *Hall v. State*, 661 S.W.2d 101 (Tex.Crim.App.1983) (affirming a conviction for possession of obscene devices against a first amendment challenge), and its later pronouncement of the law in *Hoyle v. State*, 672 S.W.2d 233 (Tex.Crim.App.1984); *see also Yorko v. State*, 690 S.W.2d 260 (Tex.Crim.App.1985).

In *Hoyle,* the Court of Criminal Appeals reversed a holding of the 14th Court of Appeals, which had concluded that the jury's erroneous charge on the statutory presumption of Tex.Penal Code Ann. sec. 43.23(e) was harmless. The Court of Criminal Appeals, referring to its earlier decision in *Shealy v. State*, 675 S.W.2d 215 (Tex. Crim.App.1984), held that because the promoted material, a magazine, was presumptively protected by the federal and state constitutions, the court's instruction to the jury could not be harmless error. But the court made a clear and explicit distinction between protected material such as films and magazines, and obscene devices such as dildos. In a footnote to its opinion, the court stated:

> What we have stated today, and what we stated in *Shealy v. State,* supra, do not conflict with what we stated [sic] *Hall v. State*, 661 S.W.2d 101 (Tex.Cr.App.1983), because in *Hall v. State, id.,* the objects which were promoted by the defendant in that cause were dildos, *which are not constitutionally protected.* Because dil-

dos are not constitutionally protected, it was permissible for the trial court to invoke and apply in the court's charge the presumption provided by Section 43.- 23(e), in conjunction with V.T.C.A., Penal Code, Section 2.05.

*Hoyle,* 672 S.W.2d at 235 n. 2 (emphasis added).

■ This Court, as an intermediate appellate court, is bound to follow the law as declared by the highest courts of this state. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964). The Court of Criminal Appeals is the highest tribunal on matters pertaining to the enforcement of criminal laws, and when it has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation. *See Robinson v. City of Galveston,* 51 Tex.Civ.App. 292, 111 S.W. 1076 (1908, no writ); *see also State v. Schwarz*, 103 Tex. 119, 124 S.W. 420 (1910).

The quoted statement of the Court of Criminal Appeals in *Hoyle* was obviously made intentionally and with forethought to guide the bench and the bar in future proceedings. Although the statement may have been unnecessary to the court's decision in that case, we consider its judicial pronouncement of the law to be controlling on the question here. *See Stephenson v. Perlitz*, 524 S.W.2d 786, 788–89 (Tex.Civ. App.—Beaumont 1975), *rev'd on other grounds,* 532 S.W.2d 954 (Tex.1976); *Thomas v. Meyer,* 168 S.W.2d 681, 685 (Tex.Civ.App.—San Antonio 1943, no writ). We accordingly hold that obscene devices do not fall within the protection afforded by our federal or state constitutions.

■ We also hold that the police officers had sufficient probable cause to believe that an offense was being committed in their presence, justifying the appellant's arrest without a warrant pursuant to Tex. Code Crim.P.Ann. art. 14.01 (Vernon 1977). The officers testified, without objection, that the appellant was the sole employee in the store and that he conducted sales of items in their presence. The six devices in question were openly displayed in the glass store counter, behind which the appellant

stood while he conducted the sales. The officers testified, without objection, that the six devices were "obscene devices," designed or marketed as useful primarily for the stimulation of human genital organs. On the basis of this knowledge, the officers were justified in believing that the appellant was unlawfully promoting such devices in violation of Tex.Penal Code Ann. sec. 43.23; *see Moses v. State*, 630 S.W.2d 337 (Tex.App.—Houston [14th Dist.]), *reh'g denied*, 633 S.W.2d 585 (Tex.App.—Houston [14th Dist.] 1982, no pet.). We overrule appellant's first ground of error.

■ In his second ground of error, appellant contends that the trial court erred in permitting the police officers to testify with respect to the purpose and use of the obscene devices, based in part upon their having read certain magazine advertisements, which were not introduced into evidence. We overrule this contention. A witness may testify about a fact if his knowledge of that fact was gained through personal observation, and he may state reasonable inferences to be drawn from that observation. *Wilson v. State*, 605 S.W.2d 284 (Tex.Crim.App.1980); *Keegan v. State*, 681 S.W.2d 806 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd).

Here, the officers' testimony was based not only on the knowledge they gained from viewing the magazine advertisements, but on their own personal observations and experiences as vice squad officers. As stated above, the officers testified without objection that the devices were "obscene devices," designed or marketed as useful primarily for the stimulation of human genital organs. On the basis of the displayed objects themselves, the officers could reasonably have determined, from their own personal observation, that the devices were in fact designed and marketed as useful primarily for the stimulation of human genital organs. Appellant's second ground of error is overruled.

In his third ground of error, the appellant contends that the evidence is insufficient to support the jury's finding that the items were obscene devices and that appellant knew the character and content of

such items. Again, the appellant primarily relies on cases involving obscene materials within the ambit of the first amendment. Since we have decided that obscene devices are not within the constitutional protection afforded by the first amendment, we need not discuss those cases.

The one case cited by appellant that did involve an obscene device does not support the appellant's argument. In that case, *Teeters v. State*, 624 S.W.2d 391 (Tex.App.—Corpus Christi 1981, no pet.), an artificial vagina was held to be an obscene device, based on the court's independent inspection of the device, on evidence showing the manner in which the device was displayed in the store, and on instructions given by the appellant regarding the use and cleaning of the device. Indeed, the decision of the court of appeals in *Teeters* tends to support the State's position.

■ Here, the police officers vividly described the intended use of the obscene devices, indicating that the sole purpose of both devices was the stimulation of the male penis to ejaculation. This testimony was received without objection, and it fully supports the officers' stated opinions that the devices were "obscene devices" within the statutory definition. It is also undisputed that the devices were openly displayed in a glass-enclosed counter, behind which the appellant stood and made sales. This evidence supports the inference that the appellant had knowledge of the content and character of the obscene devices.

We hold that the evidence is sufficient to support the finding that the items in question were obscene devices and that the appellant had knowledge of their content and character. The third ground of error is overruled.

The judgment of the trial court is affirmed.

LEVY, Justice, concurring.

In his first ground of error, appellant argues that "obscene devices," as defined by sec. 43.21(a)(7) of our Penal Code (Vernon Supp.1985), are within the protection of

the First Amendment, requiring a prior judicial determination of probable obscenity before such material is seized. The State does not dispute appellant's contentions that the arrest and seizure were made without warrant and were based solely upon the observations and decisions of the officers made within a few minutes before the arrest.

Whether obscenity is utterance within the area of protected speech is the dispositive question. Expressions found in numerous opinions indicate that Texas courts have consistently assumed that obscenity is not protected by the freedom of speech. *See Hoyle v. State,* 672 S.W.2d 233 (Tex. Crim.App.1984); *Shealy v. State,* 675 S.W.2d 215 (Tex.Crim.App.1984); *Hall v. State,* 661 S.W.2d 101 (Tex.Crim.App.1983) (per curiam); *Davis v. State,* 658 S.W.2d 572 (Tex.Crim.App.1983).

> The guarantees of freedom of expression in effect in 10 of the 14 States which by 1792 had ratified the Constitution, gave no absolute protection for every utterance. Thirteen of the 14 States provided for the prosecution of libel, and all of those States made either blasphemy or profanity, or both, statutory crimes. As early as 1712, Massachusetts made it criminal to publish "any filthy, obscene, or profane song, pamphlet, libel or mock sermon" in imitation or mimicking of religious services. Acts and Laws of the Province of Mass. Bay, c. CV, sec. 8 (1712), Mass. Bay Colony Charters & Laws 399 (1814).

*Roth v. United States,* 354 U.S. 476, 482–83, 77 S.Ct. 1304, 1307–08, 1 L.Ed.2d 1498 (1957) (footnotes omitted). In light of our early constitutional history, it is apparent that even the unconditional phrasing of the First Amendment was not intended to protect every utterance. But there is a respectable body of scholars who argue that the First Amendment puts free speech in a preferred position, and that, with its prohibition in terms absolute, it was designed to preclude courts as well as legislatures from

weighing the values of speech against silence.

It seems at first blush almost absurd to claim that the promotion of "obscene devices" is a form of communication that is entitled to draw to its protection the First Amendment of the federal constitution. Implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance. All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion [1]—have the full protection of the First Amendment. In order to fulfill its historic function, freedom of discussion *must* embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period, *see Thornhill v. Alabama,* 310 U.S. 88, 101–102, 60 S.Ct. 736, 743–744, 84 L.Ed. 1093 (1940), and to make well-balanced, thoroughly considered decisions with respect to public policy.

To recognize the existence of a problem with obscenity does not require that this Court sustain any and all measures adopted to meet that problem. The history of the application of laws designed to suppress the obscene demonstrates convincingly that the power of government can be invoked under them against great art or literature (e.g., Picasso, Bosch, Toulouse-Lautrec, Shakespeare, Bocaccio, Milton, Chaucer, Henry Miller, James Joyce), scientific treatises (e.g., Galileo, Darwin, Robert Oppenheimer), or works exciting social controversy (e.g., Marx, Veblen, Bertrand Russell, Eugene V. Debs). The distinction between the obscene and literature or science is not clear and unwavering. Obscene material deals with sex in a manner appealing to prurient interest, but sex and obscenity are not synonymous. *Roth v. United States,* 354 U.S. at 487, 77 S.Ct. at 1310. All a literary gem need do, to be regarded as at least partly obscene, is arouse a lust-

---

1. "[I]f there is any principle of the constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree

with us but freedom for the thought that we hate." *United States v. Schwimmer,* 279 U.S. 644, 654–55, 49 S.Ct. 448, 451, 73 L.Ed. 889 (1929) (Holmes, J., dissenting).

ful desire *or incite* a lascivious thought. The list of books or paintings that judges and juries can place in that category is endless. If a work does arouse such thought or desire, and yet, taken as a whole, it has serious literary, artistic, political, or social value, is it constitutionally "obscene"?

In short, I have severe misgivings in upholding sec. 43.23, because the history of legislation dealing with "obscenity," "profanity," or "libel" shows such legislation to be inimical to unfettered and robust expression. I would like to give the broad sweep of the First Amendment full support, inasmuch as I have the same confidence in the ability of our people to reject "obscene devices" and noxious literature as I have in their capacity to sort out the true from the false in philosophy, politics, theology, economics, or any other field. And I think that the State, in its penal code, should be concerned with antisocial conduct, not with utterances or impure thoughts. The law must draw a distinction between a criminal act and yielding to a vice. To allow the State to intrude upon individual privacy and punish mere possession of devices that a judge or jury thinks have an undesirable impact on *thoughts*—but that is not shown to be a part of unlawful *action*—is drastically to curtail the First Amendment. This issue cannot be resolved merely by saying that obscenity is not protected by the First Amendment. The fundamental, and intimidating, question remains: what is the constitutional test of obscenity?

Having expressed these misgivings, I must agree with the majority that we are bound to follow the Court of Criminal Appeals in its *Shealy, Hall,* and *Hoyle* decisions that "obscene devices" are not behind the shield of the First Amendment. That is really all that this case presents to us, and that is all we need to decide.