Steve Charles McKINNEY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–03–00565–CR, 01–03–00734–CR, 01–03–00735–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 2005.

Rehearing Overruled March 8, 2005.

Discretionary Review Granted Nov. 2, 2005.

Madeleine Connor, Austin, TX, Pheobe S. Smith, Houston, TX, for Appellant.

David C. Newell, Assistant District Attorney, John J. Harrity, III, Assistant District Attorney–Fort Bend County, Richmond, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

On a three-count indictment, a jury convicted appellant, Steve Charles McKinney, of the murder of Guillermo Arvizu; of the capital murder of Danielle Fleischmann Arvizu, Guillermo's pregnant wife; and of the capital murder of Hayley Arvizu, the couple's five-year-old daughter. The jury assessed appellant's punishment at life in prison for the murder of Guillermo. The State sought the death penalty for the capital murders of Danielle and Hayley; however, because the jury found that sufficient mitigating circumstances warranted life imprisonment for the two capital murders, the trial court sentenced appellant to life in prison for both offenses. We consider (1) whether appellant is estopped, by requesting a lesser-included-offense instruction on which the jury convicted him, from asserting that the evidence is legally and factually sufficient to support his murder conviction and, if not, whether the evidence is sufficient; (2) whether the evidence is legally and factually sufficient to support appellant's capital-murder convictions as a party to the offenses; (3) whether the trial court reversibly erred in instructing the jury in the abstract on causation in a manner that omitted concurrent-causation language; and (4) whether allegedly inconsistent verdicts for the murder of Guillermo and for the capital murder of Danielle require reversal. We affirm.

## Background

On the afternoon of October 1, 2001, appellant and his friend, Latasha Simmons, met with Christopher Torres, an acquaintance of appellant. Torres asked appellant to drive him to the home of Guillermo, a drug dealer who "moved 10 kilos a week" and who had "a lot of money, a lot of guns, [and] a big-screen TV." Appellant dropped off Torres, whom he knew had a gun with him, at the corner of the Arvizus' street, and appellant and Latasha went to get some food. About 20 minutes later, appellant and Latasha parked in the Arvizus' driveway. Appellant brought a shotgun and some shells as he exited the truck. After his shotgun had discharged once into the ground outside the door, appellant reloaded and shot Guillermo in the chest through the front door; Guillermo eventually died of this wound. Appellant joined Torres in the home, where Torres threatened Danielle with his gun. As appellant was leaving the home, Torres shot Danielle and Hayley, killing them. Appellant then drove Torres away and helped him to dispose of the gun that had been used to kill Danielle and Hayley.

## Legal- and Factual–Sufficiency Challenges

In his seventh and eighth issues, appellant argues that the evidence is legally and factually insufficient with respect to count one of the indictment to show that he intended to murder Guillermo. In his first through fourth issues, appellant asserts that the evidence was legally and factually insufficient with respect to counts two and three of the indictment—the capital murders of Danielle and Hayley—to show (1) his intent to act as a party to their murders and (2) causation. In his fifth and sixth issues, appellant argues that the evidence was legally and factually insufficient with respect to count two of the indict-

ment—the capital murder of Danielle—to show that he acted alone or as a party to attempted or completed robbery or burglary and to show that there was a causal nexus between the murder and any aggravating offense.

## A. Standards of Review

■ In reviewing a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

■ In reviewing a factual-sufficiency challenge, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson*, 23 S.W.3d at 11. The factual-sufficiency standard "acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." *Zuniga v. State*, 144 S.W.3d 477, 485 (Tex.Crim.App.2004). The appellate court should not substitute its own judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996). The fact finder is entitled to believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

## B. Sufficiency of the Evidence

**1. Sufficiency of the Evidence Supporting Conviction for the Murder of Guillermo**

■ In his seventh and eighth issues, appellant argues that the evidence is legally and factually insufficient with respect to count one of the indictment to show that he had the requisite *mens rea* to murder Guillermo. Appellant was originally charged with the capital murder of Guillermo.

### a. Estoppel

Appellant requested and received a charge on, among other things, the lesser-included offense of murder. The jury convicted appellant of murder. The State argues that appellant is estopped from challenging the legal and factual sufficiency of the evidence supporting the elements of this offense. The State relies on a line of cases from the Court of Criminal Appeals providing that a defendant who invokes the benefit of a lesser-included offense by either requesting a charge on it or by not objecting to its submission in the charge is estopped from complaining on appeal that the evidence is legally insufficient to support a conviction on the lesser offense. *See Bradley v. State*, 688 S.W.2d 847, 853 (Tex.Crim.App.1985) (plurality op. & dictum), *overruled on other grounds by Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim.App.1998); *State v. Lee*, 818 S.W.2d 778, 781 (Tex.Crim.App.1991) (plurality op.), *disapproved on other grounds by Moore*, 969 S.W.2d at 10; *see also State v. Yount*, 853 S.W.2d 6, 9 (Tex.Crim.App. 1993) (noting that its holding, which was that defendant who requested lesser-included-offense charge could not attack conviction for lesser-included offense on limitations grounds, was analogous to estoppel holding of *Lee* plurality); *id.* at 11 n. 3 (Baird, J., concurring in result) (noting that concurring judge's proposed bright-line rule concerning limitations was analogous to *Lee's* plurality holding). Several courts of appeals have noted or followed this line of authority or have expanded its

application to factual-sufficiency challenges.[1]

As an intermediate appellate court, we must follow binding precedent of the Court of Criminal Appeals. *See Southwick v. State*, 701 S.W.2d 927, 929 (Tex.App.-Houston [1st Dist.] 1985, no pet.). Were it not for the *Yount* court's reaffirmation of *Lee's* estoppel holding, *Lee* and *Bradley* would not be binding precedent. *Lee* was a plurality opinion that was joined by three judges; five judges joined the judgment only, and one judge dissented. *See Lee*, 818 S.W.2d 778. *Bradley's* earlier statement of the estoppel rule, which the *Lee* plurality espoused, was *dictum*, and *Bradley* itself was also a plurality opinion. *See Bradley*, 688 S.W.2d at 853. But, in 1993, the majority in *Yount* reaffirmed the *Lee* plurality's reasoning—although *Yount's* holding concerned only an analogous situation. *See Yount*, 853 S.W.2d at 9 (five-judge majority); *id.* at 11 n. 3 (Baird, J., concurring in result, joined by two judges). Because of these statements in *Yount*, we conclude that we are bound by *Lee's* estoppel rule in the context of legal-sufficiency challenges. *See Southwick*, 701 S.W.2d at 929.

Although we follow *Lee's* estoppel rule, we nonetheless question its appropriateness, and we respectfully urge the Court of Criminal Appeals to reconsider the rule. *See Castillo v. State*, 7 S.W.3d 253, 262 (Tex.App.-Austin 1999, pet. ref'd) (in opinion authored by retired Presiding Judge Onion, questioning continued viability of *Lee* estoppel rule and declining to apply it to "the peculiar factual situation" of that case). The rule was originally set out in *dictum* in a plurality opinion (*Bradley*), with little analysis, and was then adopted by another plurality opinion (*Lee*). The *Bradley* court and *Lee* plurality reasoned that the invocation of the benefit of a lesser-included-offense charge is what estops the defendant from his appellate challenge. *See Lee*, 818 S.W.2d at 781; *Bradley*, 688 S.W.2d at 853. The *Bradley* plurality further noted that failure to object to the court's submission of such a charge "would signal acquiescence ... in the trial court's judgment that" the lesser-included offense was raised by the evidence. *Bradley*, 688 S.W.2d at 853. The *Yount* court reiterated *Lee's* and *Bradley's* reasoning. *See Yount*, 853 S.W.2d at 9. However, in *Yount*, the State could not, over a timely objection, have charged the appellant with the particular lesser-included offense because limitations had expired. *See id.* at 7. Accordingly, when the appellant affirmatively requested a charge on that lesser-included offense, he made a strategic choice to forego an absolute (albeit waivable) bar to prosecution for that offense in exchange for the benefit of the chance at a less serious conviction.

■ The situation in *Yount* is not like the situation here. More importantly, the result articulated in *Bradley*, *Lee*, and *Yount* (estoppel) does not necessarily flow from the action (the typical request for a lesser-included-offense instruction or the

1. *See Otting v. State*, 8 S.W.3d 681, 686–87 (Tex.App.-Austin 1999, pet. ref'd, untimely filed) (applying rule to factual-sufficiency challenge); *Torres v. State*, 979 S.W.2d 668, 671 (Tex.App.-San Antonio 1998, no pet.) (legal sufficiency); *Reaves v. State*, 970 S.W.2d 111, 118 (Tex.App.-Dallas 1998, no pet.) (legal and factual sufficiency); *Bisco v. State*, 964 S.W.2d 29, 30 (Tex.App.-Tyler 1997, pet. ref'd) (legal and factual sufficiency); *Grant v. State*, 950 S.W.2d 450, 451 (Tex.App.-Beaumont 1997, pet. ref'd) (legal sufficiency); *Taylor v. State*, 947 S.W.2d 698, 702 (Tex.App.-Fort Worth 1997, pet. ref'd) (legal and factual sufficiency); *Scott v. State*, 867 S.W.2d 148, 154 (Tex.App.-Austin 1993, no pet.); *Tamez v. State*, 865 S.W.2d 518, 519–20 (Tex.App.-Corpus Christi 1993, pet. ref'd) (legal sufficiency); *Richardson v. State*, 832 S.W.2d 168, 171 (Tex.App.-Waco 1992, pet. ref'd) (dictum); *Brown v. State*, 740 S.W.2d 45, 46 (Tex.App.-Houston [14th Dist.] 1987, no pet.).

failure to object to the submission of one). Estoppel has been defined as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or has been legally established as true." BLACK'S LAW DICTIONARY 570 (7th ed.1999). Similarly, the law of invited error, which is a species of estoppel, "estops a party from making an appellate error of an action it induced." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App.1999).

 To be entitled to a charge on a lesser-included offense, there must be, among other things, *some evidence* that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981). The credibility of the evidence raising a lesser-included offense and whether that evidence is controverted or conflicts with other evidence may not be considered in determining whether to instruct the jury on a lesser-included offense. *Moore v. State*, 574 S.W.2d 122, 124 (Tex.Crim.App.1978). It is the jury's duty to weigh the evidence and to determine whether the credible evidence supports the offense charged, the lesser-included offense, or neither. *Id.* On the other hand, to determine whether trial evidence is legally sufficient, we view it in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense *beyond a reasonable doubt. King*, 29 S.W.3d at 562; *Johnson*, 23 S.W.3d at 7.

Given these legal standards, if a defendant admits to anything by requesting a lesser-included-offense charge, it is only that there is *some* evidence that merits allowing the jury to decide if he is guilty of that lesser offense. He does *not* admit, however, that the evidence proves the lesser offense *beyond a reasonable doubt;* that is why the matter still goes to the jury, and it is that determination (that the evidence supports the conviction beyond a reasonable doubt) that is reviewed in a legal-sufficiency challenge. For this reason, a defendant's invoking the benefit of a lesser-included-offense charge generally should not justify the forfeiture of a legal-sufficiency challenge on appeal.[2]

Furthermore, to hold that a defendant is estopped from asserting a legal-sufficiency challenge on appeal if he does not object when *the State* requests a lesser-included-offense charge is even harder to justify. In that situation, the defendant does nothing affirmatively to procure the lesser charge. This is not invited error; if it is anything, it is waiver. But our law does not require a criminal defendant to preserve a legal-sufficiency challenge. Under the *Lee* estoppel rule, however—and contrary to the rule in any other context—a criminal defendant must in effect preserve a legal-sufficiency challenge by objecting when the State seeks a lesser-included-offense instruction; if he does not, he is estopped from raising the challenge on appeal, which has the same effect for him as a waiver.

 We also conclude that a defendant is not estopped from challenging the factual sufficiency of the evidence supporting a lesser-included offense on which he requested a jury charge.[3] Whatever a de-

---

2. We realize that it would be a very rare case in which the evidence would not be found legally sufficient when there was at least some evidence supporting each element of the lesser offense. It is thus the anomalous reason-

ing of the *Yount, Lee,* and *Bradley* decisions, not their practical effect, which is of concern.

3. The Court of Criminal Appeals has not yet applied the *Lee* estoppel rule to factual-sufficiency challenges.

fendant admits to by requesting a lesser-included-offense charge, it is at most that *some* evidence exists to get the lesser offense before the jury for determination. *See Rousseau*, 855 S.W.2d at 672–73; *Royster*, 622 S.W.2d at 446. That is, a request for a lesser-included-offense charge admits that some evidence exists, but it does not admit to the *quantity* or *quality* of that evidence. In a factual-sufficiency challenge, in contrast, the reviewing court looks at *all* of the evidence neutrally and determines whether the "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson*, 23 S.W.3d at 11. This standard thus considers the quality and quantity of the evidence, while a request for a lesser-included-offense charge does not admit to evidentiary quality and quantity. Accordingly, we disagree with the courts of appeals that have applied the *Lee* estoppel rule to bar factual-sufficiency challenges.

Because we are bound by Court of Criminal Appeals precedent, we hold that appellant is estopped from challenging the legal sufficiency of the evidence showing the elements of the lesser-included offense for which he was convicted.[4] However, we further hold that appellant is not estopped from challenging the factual sufficiency of the evidence. We respectfully urge the Court of Criminal Appeals to revisit the sufficiency-estoppel rule announced in *Bradley, Lee*, and *Yount* and to clarify that that rule does not bar a factual-sufficiency challenge.

### b. Factual sufficiency

We first consider the evidence that supports the jury's verdict. *See Johnson*, 23 S.W.3d at 11 (in factual-sufficiency review, requiring review of "all the evidence, both for and against" the jury's finding). Appellant agreed to take Torres to the Arvizu residence. Torres told appellant beforehand that Guillermo was a gang member and drug dealer who had a lot of guns and money and a big-screen television. Appellant admitted that Torres "gave [appellant] the impression that [Guillermo] owed [Torres] something." Appellant also admitted bringing his shotgun along at Torres's request, and he knew that Torres was taking his own gun into the Arvizus' home. Appellant, whom Guillermo did not know, dropped off Torres, whom Guillermo and his family did know, at the corner of the Arvizus' street, out of sight of their home; a rational jury could have inferred that appellant did so in order to be Torres's hidden back-up, in case Torres did not get what he wanted beforehand, rather than for the reasons that appellant gave in his statement to the police.[5] When appellant eventually went

---

4. In the event that the Court of Criminal Appeals concludes that the *Lee* estoppel rule is no longer viable, we have reviewed the legal sufficiency of the evidence of murder. The charge allowed the jury to convict appellant of murder if the jury found that appellant, as a principal or as a party, intentionally or knowingly caused Guillermo's death by unlawfully shooting him with a firearm. *See* TEX. PEN.CODE ANN. § 19.02(b)(1)(Vernon 2003). Appellant argues that the location of a spent shotgun shell in the Arvizus' hallway could not establish his intent to kill because, for the jury to so conclude from that evidence alone, it would impermissibly have to stack

inference upon inference. Appellant supports his legal-sufficiency argument with one piece of evidence viewed in isolation. That argument overlooks all of the other evidence—set out in detail in our factual-sufficiency analysis below—that supports the jury's implicit determination that appellant intended to kill Guillermo. Thus, were we to reach the issue, we would hold that the evidence was legally sufficient to show that appellant intentionally or knowingly killed Guillermo with a firearm.

5. Appellant, in his statement, asserted that Torres had asked appellant to drop him at the corner because Guillermo "did not know [ap-

to the Arvizu residence after having dropped Torres off, he took his shotgun with him. Because two spent shotgun shells were found at the crime scene, because appellant admitted to having fired two shots, and because a witness heard two shots, appellant must have taken at least two shells with him—from which the jury rationally could have inferred an intent to shoot repeatedly. Appellant's shotgun first discharged into the mat outside the front door, which the jury could have believed was unintentional; however, appellant then *reloaded* the shotgun and proceeded to shoot Guillermo through the front door.[6] Although a bamboo shade hung over the front-door glass, appellant admitted that he heard Guillermo saying identifiable things from inside the house, from which the jury could have inferred that appellant believed that Guillermo was near the door. Although appellant claimed that the shotgun accidentally misfired the second time, appellant did not run away or behave in a surprised manner after having shot Guillermo; rather, he reached in through the door's broken glass, opened the door, entered the home, and then went as far back as the bathroom at the end of the back hallway.[7]

We next consider the evidence that appellant claims supports his factual-suffi-ciency challenge: the shotgun was inherently unsafe, appellant's expert opined that the shotgun could have fired accidentally twice, appellant also injured his co-defendant with the second shotgun blast, the front door was closed, the door's glass was covered by a bamboo blind, the shooting occurred in the daytime, appellant's approach to the home was conspicuous, appellant did not speed away from the crime scene, Guillermo uttered a name sounding like Torres's nickname to officers as he was dying, Guillermo was a drug dealer and gang member, and Torres told appellant to return to the Arvizus' home if Torres did not come out within 15 minutes because there could be trouble in that case.

Both parties' experts testified that appellant's sawed-off shotgun was an inherently unsafe firearm—due to its age, its trigger and trigger guard's having been wrapped in duct tape, its being sawed-off, its safety mechanism's not functioning, and its trigger's requiring less than normal pressure to discharge. Both parties' experts also testified that, because of the duct tape, the trigger would stick back for several seconds after being pulled. Appellant's expert, Ronald Singer, testified that those conditions could cause the shotgun to fire inadvertently "in a number of ways,"

pellant] and he did not want anyone knowing where he stayed."

6. Appellant admitted in his statement that he reloaded the shotgun outside after it had first misfired, but claimed that the second shot was also a misfiring and produced expert testimony in support. However, the State presented evidence from its expert witness indicating that it was extremely unlikely that the second shot was accidental. The jury could have believed whichever expert it chose.

7. The residence opened onto a living and dining area, with a hallway at the left; after a few feet, the hallway turned to the right. At the hallway's end was a bedroom, which had a bathroom just inside of it. Officers found the second spent shotgun shell where the hallway turned right. Appellant's statement recited that "there [were a] woman and a little kid in the bathroom," that the woman (Danielle) asked him not to kill her husband, that Torres then "came into the bathroom," that Torres then grabbed Danielle and threatened her with the gun, and that, as he was leaving, appellant "got into the hallway" and then heard two shots. From this evidence, the jury could have inferred that appellant had gone into the home as far as the back hallway and bathroom, rather than staying at the front of the home.

and he recreated that kind of inadvertent discharge in tests. Singer also testified that the ejector mechanism stuck when he tested the shotgun, which, along with the other factors, led to the shotgun's inadvertent firing. Additionally, Sergeant S. Chappell testified that "what [he] found at the scene" was equally consistent with the shotgun's having been fired either intentionally and inadvertently.

However, Sergeant Chappell also testified that, in his opinion, the shotgun did not fire inadvertently. Additionally, and contrary to Singer's testimony, Michael Lyons, the State's expert, testified that the shotgun's ejector mechanism never malfunctioned for him when he tested it. Lyons also testified that he could not reproduce the conditions that might lead to an inadvertent firing of appellant's shotgun. The jury was entitled to believe the State's expert over appellant's and to conclude that the shotgun did not accidentally discharge. *See Sharp*, 707 S.W.2d at 614.

Appellant also notes that a witness saw appellant drive slowly to the house before the shooting began, loud music was playing in the truck, the sound of its exhaust system was noticeable, and it was broad daylight at the time. From this evidence, appellant concludes that he obviously did not intend to commit any crime if he drew attention to himself beforehand. However, the same witness noted that appellant also *left* the crime scene "slowly, casually, [and] regularly," despite his shotgun's just having discharged loudly outside twice; a rational jury could thus have attached little significance to appellant's having approached the house slowly and conspicuously. The jury also rationally could have considered that appellant's driving slowly and "casually" after the murders undermined his claim that he had accidentally shot Guillermo: the jury might have considered the calm departure inconsistent

with surprise. Additionally, a witness described appellant's slow drive to the home as appearing like appellant was "looking for something," and the jury rationally could thus have interpreted appellant's slow approach as checking out the scene before committing the crime.

As for Guillermo's uttering something sounding like Torres's nickname, we note that it was undisputed that appellant, rather than Torres, shot Guillermo. The jury could also have concluded that it was not surprising that Guillermo uttered only the name of the attacker whom he knew. Accordingly, we cannot agree with appellant's claim that the evidence was factually insufficient to support the verdict because the uttering of Torres's name allegedly "reveal[ed] *Torres's* intent to murder Guillermo" and "militat[ed] away from *appellant's* intent to murder Guillermo." (Emphasis in original.) Additionally, given the circumstantial evidence of appellant's intent to kill set out above, the jury could simply have disbelieved appellant's claims in his statement that he returned to the Arvizus' home with a shotgun solely because Torres had told him that there could be trouble from drug-dealer Guillermo and that his shotgun had misfired both times. *See Sharp*, 707 S.W.2d at 614. Finally, as for evidence indicating that appellant could not see Guillermo through the door, there was also evidence indicating that appellant heard Guillermo through it.

Accordingly, we hold that the proof of appellant's guilt "is [not] so obviously weak as to undermine confidence in the jury's determination," nor is it "greatly outweighed by contrary proof." *See Johnson*, 23 S.W.3d at 11; *see also Zuniga*, 144 S.W.3d at 485.

We overrule appellant's seventh and eighth issues.

**2. Sufficiency of the Evidence Supporting Conviction for the Capital Mur-**

ders of Danielle and Hayley: Party Liability and Causation

In his first through fourth issues, appellant asserts that the evidence was legally and factually insufficient to show his intent to act as a party to Danielle's and Hayley's murders and to show causation.[8] Specifically, appellant argues that "there is insufficient evidence that appellant formed the requisite intent to aid, encourage, promote, or assist Torres in committing the capital murders of Danielle and Hayley."

### a. The law

 Under the law of parties upon which the jury was instructed, a person is criminally responsible for the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 2003). The evidence must show that, at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App. 1994). In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Id.* An accused's mental state may be inferred and proven circumstantially from acts, words, and surrounding circumstances. *See Ledesma v. State,* 677 S.W.2d 529, 531 (Tex.Crim.App.1984).

### b. Legal sufficiency

 The evidence detailed above with respect to Guillermo's murder—viewed in the most favorable light and taking into account all reasonable, favorable inferences—also supports the jury's implicit findings on intent with respect to Danielle's and Hayley's capital murders because that evidence indicated that appellant encouraged, aided, or attempted to aid Torres in committing the series of crimes against the Arvizus—from the very start, with Guillermo's murder, to the very end, with the murder of the other family mem-

---

**8.** Appellant's sufficiency challenges concerning causation are premised on the belief that a concurrent-causation instruction can apply, and should have been given here, when a defendant is liable only as a party—as appellant was for Danielle's and Hayley's capital murders. Such an instruction is based on the italicized portion of the statutory definition of causation: "A person is criminally responsible if the result would not have occurred but for his conduct, *operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.*" TEX. PEN.CODE ANN. § 6.04(a) (Vernon 2003) (emphasis added). For reasons discussed later in our opinion, we conclude that a concurrent-causation instruction based on the text italicized above should not be given when a defendant, who is liable solely as a party, claims that the principal's acts are the concurrent cause.

We measure the sufficiency of the evidence—both legal and factual—against the hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim. App.1997) (legal sufficiency); *Reaves v. State,* 970 S.W.2d 111, 116 (Tex.App.-Dallas 1998, no pet.) (factual sufficiency). The hypothetically correct jury charge would not have contained a concurrent-causation instruction with respect to counts two and three. Indeed, the jury instruction actually given omitted the italicized concurrent-causation language, providing instead only that "[a] person is criminally responsible if the result would not have occurred but for his conduct"; neither did the court apply its instruction to the facts. Accordingly, we overrule appellant's challenges to the sufficiency of the evidence showing causation with respect to counts two and three.

bers. For example, appellant's statement revealed that, while in the home, he saw Torres grab Danielle by the hair, point his gun to her head, and demand, "Where's it at?" Although appellant's statement claimed that he began leaving the home before Torres shot Danielle and Hayley, a rational jury could have concluded that appellant simply left Torres to carry out the pre-planned killings. Additionally, a rational jury could have inferred that appellant killed Guillermo—the sole adult male in the home—so that Torres could more easily murder the others, who were a woman about eight months pregnant and her young child. Furthermore, after hearing the shots that killed Danielle and Hayley, appellant did not drive away, but instead waited for Torres to exit, which did not occur "right away." Finally, when Torres admitted in the truck to having shot Danielle and Hayley, appellant continued to drive Torres away and helped him to dispose of the handgun.

We hold that this evidence is legally sufficient to show that appellant "encourage[d], . . . aid[ed], or attempt[ed] to aid" Torres specifically in the shootings of Danielle and her daughter. See TEX. PEN.CODE ANN. § 7.02(a)(2). The above evidence likewise shows that appellant and Torres "were acting together, each contributing some part towards the execution of their common purpose" of murdering Danielle and Hayley. See Ransom, 920 S.W.2d at 302.

Appellant nonetheless argues that (1) "a rational jury could not have concluded that appellant shot Guillermo so that Torres could more easily murder Danielle and Hayley with the handgun"; (2) his reload-

ing his shotgun "was not enough to support the intent element [with regard to Danielle and Hayley] because he did not shoot either Danielle or Hayley"; (3) the evidence could not be legally sufficient because "appellant left the home *before* Torres shot" Danielle and Hayley; and (4) nothing showed that appellant "knew anything about Torres's plan to murder Danielle and Hayley." (Emphasis in original.) However, as we have discussed above, the jury rationally could have concluded that appellant and Torres both planned to kill the home's residents and that appellant ended up killing Guillermo, while Torres ended up killing the others.[9] Moreover, appellant's driving Torres to and from the scene, bringing a shotgun along, taking more than one shotgun shell with him to the home, helping Torres to dispose of one of the murder weapons, and shooting the only adult male in the home before Torres shot pregnant Danielle and young Hayley all support the jury's implicit finding that appellant, "acting with intent to promote or assist the commission of" Danielle's and Hayley's murders, "encourage[d], . . . aid[ed], or attempt[ed] to aid" Torres in carrying out the murders. See TEX. PEN. CODE ANN. § 7.02(a)(2). In implicitly reaching this conclusion, the jury did not, contrary to appellant's accusation, impermissibly stack inference upon inference. *Compare Richardson v. State*, 834 S.W.2d 535, 537 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (op. on reh'g).

## c. Factual sufficiency

Appellant relies on the following matters to show that the evidence is factually insufficient: (1) the shotgun was inherently unsafe; (2) appellant's firearms expert

---

9. We distinguish the authority on which appellant relies because, in it, nothing showed that the defendant knew that the murderer carried a weapon into the victim's home, the defendant fled to a waiting car when he heard shots, and the defendant was not in the same room when the shooter pulled out the gun and fired. *See Tippitt v. State*, 41 S.W.3d 316, 324 (Tex.App.-Fort Worth 2001, no pet.).

opined that the shotgun could have discharged inadvertently each time that it was fired; (3) the shooting occurred in the daytime; (4) appellant approached and left the Arvizus' home in a conspicuous manner or slowly; (5) the door through which appellant shot Guillermo was closed; (6) a bamboo blind hung over the door's window; (7) appellant did not know the Arvizus, but Torres did; (8) Guillermo told officers as he was dying that someone with a name like Torres's nickname had shot him; (9) appellant's statement recounted that Torres wanted to return to the home after the murders to kill the remaining child; (10) nothing of value was taken from the home; and (11) appellant's statement recounts that, when Danielle begged appellant not to kill her husband, appellant told her that he would not.

We have already held that the majority of the evidence upon which appellant relies does not make the jury's determination of intent to kill factually insufficient. In addition, even if appellant's shotgun discharged inadvertently, that would not, as a matter of law, preclude a finding of party liability. Appellant could still have intended being a party to the murders—as evidenced by his knowing that Guillermo had money and drugs, his driving with Torres to and from the crime scene, his bringing a shotgun to the home and knowing that Torres had already brought a gun into the home, his not acting shocked after any of the shootings, his waiting for Torres while Torres was shooting Danielle and Hayley, and his helping Torres to dispose of his murder weapon—even if Guillermo was killed by the shotgun's inadvertent firing.

We also note that the jury rationally could have considered appellant's calm departure after the murders inconsistent with his claimed surprise that Torres planned to shoot the wife and daughter. Additionally, given the evidence supporting the jury's verdict, the jury could simply have disbelieved the cited portions of appellant's statement. *See Sharp*, 707 S.W.2d at 614. Furthermore, the fact that nothing was taken from the home does not necessarily undermine the verdict: appellant and Torres still could have intended to kill the family even if they did not succeed in taking anything from the home; additionally, the jury reasonably could have concluded that Torres's shouting "Where is it?" at Danielle indicated that the object of the robbery or burglary had not been located.

Finally, appellant argues that, because Torres could have easily killed Guillermo without appellant's assistance, a rational jury could not find appellant liable for Danielle's and Hayley's deaths. However, it was undisputed that appellant *did* shoot Guillermo. Furthermore, just because Torres might have been able to commit the murders on his own does not mean that the jury could not rationally have concluded that they planned to commit the murders in a joint effort.

Accordingly, we hold that the proof of appellant's guilt as a party "is [not] so obviously weak as to undermine confidence in the jury's determination," nor is it "greatly outweighed by contrary proof." *See Johnson*, 23 S.W.3d at 11; *see also Zuniga*, 144 S.W.3d at 485.

We overrule appellant's first through fourth issues.

### 3. Sufficiency of the Evidence Supporting Conviction for the Capital Murder of Danielle: Aggravating Offenses

In his fifth and sixth issues, appellant argues that the evidence was legally and factually insufficient with respect to count two of the indictment—the capital murder of Danielle—to show that he acted alone or as a party to attempted or completed robbery or burglary, the underlying offenses

to capital murder on which the jury was charged, and to show that there was a causal nexus between the murder and any aggravating offense.

### a. The law

The following definitions conform to the charge given regarding count two of the indictment. A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2003). A person commits capital murder if he intentionally commits the afore-defined murder in the course of committing or attempting to commit burglary of a habitation or robbery.[10] *Id.* § 19.03(a)(2) (Vernon 2003).

A person commits robbery if, in the course of committing theft and with the intent to obtain or to maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a) (Vernon 2003). Theft occurs when a person unlawfully appropriates property with intent to deprive the owner of property. *Id.* § 31.03(a) (Vernon 2003). As used in the definition of robbery, the term "in the course of committing theft" means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of theft. *Id.* § 29.01(1) (Vernon 2003).

A person commits burglary if, without the owner's effective consent, he enters a habitation and commits or attempts to commit a felony, a theft, or an assault. *Id.* § 30.02(a)(3) (Vernon 2003). A person commits an assault if, among other things, he "intentionally, knowingly, or recklessly

causes bodily injury to another, including the person's spouse"; "intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse"; or "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* § 22.01(a)(1)-(3) (Vernon 2003).

A person commits criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. *Id.* § 15.01(a) (Vernon 2003).

### b. Legal sufficiency

■ The following evidence supports the jury's implicit determination that appellant attempted to or did commit robbery or burglary. Appellant knew before driving to the Arvizu home with Torres that Guillermo was a drug dealer who had lots of money and who moved a significant amount of drugs. He and Torres brought firearms to the Arvizu home. Appellant shot Guillermo, and Torres shot Hayley and Danielle—both of which acts the jury could have inferred were intentional, as set out above. In his statement, appellant stated that he saw Torres grab Danielle by the hair, point his gun to her head, and demand, "Where's it at?" Additionally, as set out above, the jury could rationally have inferred that appellant heard Guillermo behind the door and intentionally shot at him, after which appellant entered the home and Torres shot Danielle and Hayley. We hold that this is some evidence, when viewed in the appropriate light, that appellant acted as a principal or as a party

10. With respect to count three—the capital murder of Hayley—appellant was charged with murdering a child under six years of age.

TEX. PEN.CODE ANN. § 19.03(a)(8) (Vernon 2003) (making murder capital offense when victim is child under six).

to attempted burglary or attempted or actual robbery. *See* Tex. Pen.Code Ann. §§ 7.02(a)(2), 22.01(a)(1)-(2), 29.01(1), 29.02(a), § 30.02(a)(3), § 31.03(a).

### c. Factual sufficiency

Appellant relies on the following evidence in support of his factual-sufficiency challenge. After the murders, the Arvizu house contained a "lot of valuable items," including a big-screen television set, marihuana, and jewelry, which had not been taken during the crime. Sergeant Chappell testified that there was no evidence that anything had been taken from the residence. However, capital murder may be committed by *attempted* burglary or robbery, and robbery may be committed "in the course of committing theft," which is defined as, among other things, conduct occurring in an attempt to commit theft. *See id.* §§ 19.03(a)(2), 29.01(1). The fact that appellant and Torres left valuable items behind does not preclude a finding of attempted burglary or robbery. Additionally, whatever Torres was looking for was evidently not yet located, as evidenced by his demanding, "Where's it at?" The jury could thus have believed that appellant and Torres came to the Arvizu home looking for something other than what was readily visible—which could explain why they left other valuable items behind. Appellant also argues that the fact that he drove through the Arvizus' neighborhood in a conspicuous manner during daylight shows that he lacked intent to commit robbery or burglary. We have already concluded, however, that the jury reasonably could have placed little weight on this fact and, alternatively, that this fact does not make the remaining evidence factually insufficient to support the verdict.

We overrule appellant's fifth and sixth issues.

### Jury Instruction on Concurrent Causation

██ In his ninth issue, appellant argues that the trial court erred in instructing the jury improperly in the abstract on causation and that, consequently, all three convictions should be reversed. Specifically, appellant argues both that a concurrent-causation instruction was required on all counts and that, because the trial court gave an incomplete instruction, the court in effect lessened the State's burden of proof and thereby harmed him.

The Penal Code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, *operating* either alone or *concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.*" Tex. Pen.Code Ann. § 6.04(a) (Vernon 2003) (emphasis added to show concurrent-causation language). The jury charge contained a causation instruction omitting the concurrent-causation language of section 6.04(a); the charge provided that "[a] person is criminally responsible if the result would not have occurred but for his conduct." The causation instruction was not applied to the facts with regard to any of the three counts.

Appellant did not object to this instruction until his motion for new trial, which was too late. *See* Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon Supp.2004–2005) ("All objections to the charge ... shall be made at the time of the trial."). Because appellant did not timely object, we review for egregious harm, provided that the instruction was erroneous. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *see also* Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon Supp.2004–2005).

██ "A concurrent cause is 'another cause' in addition to the actor's conduct, an

'agency in addition to the actor.'" *Robbins v. State*, 717 S.W.2d 348, 351 n. 2 (Tex.Crim.App.1986) (quoting S. SEARCY & J. PATTERSON, PRACTICE COMMENTARY, TEX. CODE CRIM. PROC. ANN. § 6.04); *Mattox v. State*, 874 S.W.2d 929, 933 (Tex.App.-Houston [1st Dist.] 1994, no pet.) (quoting *Robbins* ). "A jury charge on causation is called for only when the issue of concurrent causation is presented." *Hughes v. State*, 897 S.W.2d 285, 297 (Tex.Crim.App. 1994).

■■■ With respect to count one—the murder of Guillermo—the trial court would have erred if it *had* included concurrent-causation language in the instruction. It was undisputed that appellant alone, as a principal, killed Guillermo. Accordingly, no other cause could have been "clearly sufficient" to have killed Guillermo, and appellant's actions were not "clearly insufficient" to have done so. At least one commentary has suggested that, when, as here, concurrent causation is not raised, the proper causation instruction to give is what was actually given: "A person is criminally responsible if the result would not have occurred but for his conduct." *See* MICHAEL J. MCCORMICK, THOMAS D. BLACKWELL, & BETTY BLACKWELL, TEXAS PRACTICE SERIES: CRIMINAL FORMS & TRIAL MANUAL § 100.07 (West 1995). *But see Hughes*, 897 S.W.2d at 297 ("A jury charge on causation is called for only when the issue of concurrent causation is presented."). However, even if the trial court erred in submitting this causation instruction with respect to appellant's actions as a principal, appellant does not explain how he was harmed, much less egregiously harmed. Indeed, there was no harm because it was undisputed that appellant alone shot Guillermo, necessarily making him the "but for" cause of the death, and because the instruction was not applied to the facts. *See Hughes*, 897 S.W.2d at 297

(overruling challenge to improperly included abstract causation instruction because application paragraph did not incorporate concurrent-causation concept and, thus, "the jury was not authorized to convict on the theory of causation").

■■■ With respect to counts two and three, it was undisputed that appellant could be liable solely as a party. When a defendant's intent and actions meet the criteria for party liability, he is criminally responsible for the conduct of the principal actor. TEX. PEN.CODE ANN. § 7.02(a)(2); *see id.* § 7.01(a). Under those circumstances, the principal actor's conduct is imputed to the party defendant. *See id.* Because the principal's actions are imputed to the party defendant, the principal's actions *are* those of the party defendant. One's own actions or state generally cannot be a concurrent cause of one's criminal act. *See Robbins*, 717 S.W.2d at 351 n. 2. Moreover, because the principal's actions are imputed to the party defendant, the defendant's actions can never be "clearly insufficient" to produce the result, as required by section 6.04(a). *See* TEX. PEN. CODE ANN. § 6.04(a). Because the party defendant's and his principal's actions cannot satisfy section 6.04(a)'s criteria as a matter of law, a trial court would err in giving a concurrent-causation instruction under these circumstances. Accordingly, we hold that a defendant who is liable solely as a party is not entitled to a concurrent-causation instruction when the alleged concurrent cause is the act of the principal. *See Hanson v. State*, 55 S.W.3d 681, 699 (Tex.App.-Austin 2001, pet. ref'd) (rejecting defendant's assertion that concurrent-causation instruction required when one who is liable as a party claims that principal's actions are concurrent cause); *see also Pheasant v. State*, No. 14–00–00398–CR, 2001 WL 931009, at *5 n. 5 (Tex.App.-Houston [14th Dist.] Aug. 16,

2001, no pet.) (not designated for publication) (implying same in dictum).

■ Even assuming that the instruction given was somehow error, appellant has not suffered egregious harm. First, the instruction was appropriate for count one, in which appellant was undisputedly the principal.[11] Second, the instruction was not applied to the facts concerning counts two or three. *See Hughes*, 897 S.W.2d at 297. Third, when the prosecutor in closing argued that the instruction's "but for" causation language applied to counts two and three, appellant objected; subsequently, in his closing argument, appellant's counsel clarified that the jury had to find that appellant was a party under the criteria of section 7.02(a) for appellant to be liable for Danielle's and Hayley's deaths. Accordingly, even assuming that the trial court erred, no egregious harm resulted.

We distinguish *Robbins v. State*, on which appellant relies. *See id.*, 717 S.W.2d 348 (Tex.Crim.App.1986). In *Robbins*, an involuntary-manslaughter case that did not involve party liability, concurrent causation was not an issue and should not have been submitted to the jury; nonetheless, the trial court gave an erroneous causation instruction that it applied to the facts. *Id.* at 351. That instruction allowed conviction if the defendant's intoxication caused "or contributed to cause" the collision and death, without also providing any restriction on the degree of contribution, as re-

quired by section 6.04(a). *Id.* at 351–52. The court held that the erroneous instruction improperly lessened the State's burden of proof. *Id.* at 352; *see Crabb v. State*, 717 S.W.2d 353, 355 (Tex.Crim.App. 1986) (identical holding to that in *Robbins* ). *Robbins* stands for the proposition that, if a trial court submits concurrent causation to the jury by instruction and application, the court had better get it right. *See id.; see also Hutcheson v. State*, 899 S.W.2d 39, 43 (Tex.App.-Amarillo 1995, pet. ref'd) (so summarizing *Robbins's* holding). As in *Robbins*, concurrent causation was not an issue raised for any count here; unlike in *Robbins*, however, the trial court in this case did not instruct the jury on concurrent causation, the "but for" causation instruction that the court gave was appropriate for appellant's actions as a principal, and that instruction was not applied to the facts with respect to any count. *See Hutcheson*, 899 S.W.2d at 42 (holding that trial court not required to apply partial section–6.04(a) abstract instruction to facts of case when concurrent causation not raised by evidence). We also reject appellant's assertion that a party who alleges that his principal's actions are a concurrent cause is entitled to a concurrent-causation instruction. In the majority of cases that we have found in which both party liability and concurrent causation are discussed, either (1) concurrent causation is considered only to the extent that the defendant acted as a principal,[12] rather than to the extent that he

11. Based on his objections to the State's closing arguments, even appellant appears to have recognized that the causation instruction was intended to apply to count one.

12. *See McFarland v. State*, 928 S.W.2d 482, 515–16 (Tex.Crim.App.1996) (appearing to consider accomplice's actions in context of defendant's liability as principal), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex.Crim.App.1998); *Marvis v. State*, 36

S.W.3d 878, 881 (Tex.Crim.App.2001) (Price, J., concurring, joined by Womack, J.); *Pheasant v. State*, No. 14–00–00398–CR, 2001 WL 931009, at *5–6 (Tex.App.-Houston [14th Dist.] Aug. 16, 2001, no pet.) (not designated for publication); *Brown v. State*, No. 14–97–01394–CR, 2000 WL 1534980, at *4 (Tex. App.-Houston [14th Dist.] Oct. 19, 2000, no pet.) (not designated for publication); *Umoja v. State*, 965 S.W.2d 3, 9 (Tex.App.-Fort Worth 1997, no pet.).

acted as a party, or (2) concurrent causation is considered only with respect to third parties' actions or conditions that are unrelated to the defendant or to the principal.[13] In the few cases in which concurrent causation may have been considered with respect to the principal's actions, the courts simply assumed, without expressly deciding the issue, that a principal's actions could be a concurrent cause, and they did not consider whether the party defendant was entitled to a concurrent-causation instruction under those circumstances.[14]

We overrule appellant's ninth issue.

**Alleged Inconsistency of Jury Verdicts**

In his tenth issue, appellant argues that his conviction on count two (Danielle's killing) should be reversed because it is inconsistent with his conviction for murder on count one (Guillermo's killing), when the jury rejected a conviction for capital murder on count one.

Appellant's brief acknowledges that this Court has already rejected this argument. *See Benavides v. State,* 992 S.W.2d 511, 519 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd); *see also U.S. v. Powell,* 469 U.S. 57, 64–67, 105 S.Ct. 471, 476–78, 83 L.Ed.2d 461 (1984); *Dunn v. U.S.,* 284 U.S. 390, 393, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932), *overruled on other grounds by Sealfon v. U.S.,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); *Ward v.*

*State,* 113 S.W.3d 518, 522–23 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (noting the rule in *Dunn* and *Powell*). Appellant further asserts that he "raises the issue here only to preserve the argument for review" in the Court of Criminal Appeals. Assuming without deciding that the verdicts are indeed inconsistent, we decline to revisit our holding in *Benavides.*

We overrule appellant's tenth issue.

**Supplemental Issue for Review**

 In a supplemental issue for review raised for the first time in his reply brief, and in response to the State's argument that party liability need not have been alleged in the indictment to be included in the charge, appellant argues that "[b]ecause the theory of party liability was not alleged in the indictment, appellant lacked adequate notice to prepare a defense." Nothing shows that appellant lacked adequate notice that the State would seek a parties charge for the capital murders of Danielle and Hayley: it was undisputed that appellant did not shoot Danielle and Hayley and that he could thus be convicted only as a party for their murders, and appellant's counsel thoroughly defended appellant throughout trial on the basis that only Torres had shot Danielle and Hayley. Moreover, the law is clear that the indictment need not allege the theory of party

---

**13.** *See Blansett v. State,* 556 S.W.2d 322, 325 (Tex.Crim.App.1977); *Deavila v. State,* No. 05–03–00705–CR, 2004 WL 858912, at *3 (Tex.App.-Dallas Oct. 13, 2004, pet. ref'd) (not designated for publication) (defendant might also have been liable also as principal); *Drews v. State,* No. 03–96–00439–CR, 1997 WL 774504, at *3 (Tex.App.-Austin Dec. 18, 1997, no pet.) (not designated for publication); *Hernandez v. State,* 938 S.W.2d 503, 513 (Tex.App.-Waco 1997, pet. ref'd); *Scull v. State,* No. 05–94–01873–CR, 1996 WL 76037, at *3 (Tex.App.-Dallas Feb. 21, 1996, pet. ref'd) (not designated for publication).

**14.** *See Curtis v. State,* 573 S.W.2d 219, 223 (Tex.Crim.App.1978); *Phillips v. State,* No. 05–01–01317–CR, 2002 WL 31478763, at *3 (Tex.App.-Dallas Nov. 7, 2002, no pet.) (not designated for publication) (so doing, although charge may have allowed conviction as principal, and discussion of concurrent causation is unclear as to whether it related to defendant's principal or party liability); *Carrasco v. State,* No. 05–93–01515–CR, 1994 WL 416720, at *4 (Tex.App.-Dallas Aug. 10, 1994, pet. ref'd) (not designated for publication).

liability as a prerequisite for the trial court's charging the jury on the law of parties. *See Marable v. State*, 85 S.W.3d 287, 287 (Tex.Crim.App.2002) (rejecting challenge that "that [the appellant] did not receive adequate notice to prepare his defense because the State did not allege in the indictment that it would prove actual delivery by the law of parties."); *accord Swope v. State*, 805 S.W.2d 442, 444–45 (Tex.Crim.App.1991); *Crank v. State*, 761 S.W.2d 328, 352 (Tex.Crim.App.1988), *disapproved on other grounds by Alford v. State*, 866 S.W.2d 619, 624 n. 8 (Tex.Crim.App.1993); *English v. State*, 592 S.W.2d 949, 955 (Tex.Crim.App.1980); *Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Crim.App.1978).[15]

We overrule appellant's supplemental issue.

### Conclusion

We affirm the judgment of the trial court.

**15.** Appellant urges us to adopt the contrary position of the dissenting judge in *Marable v. State*, 85 S.W.3d 287, 295–300 (Tex.Crim.App.2002) (Womack, J., dissenting), but as an intermediate appellate court, we must follow binding precedent of the Court of Criminal Appeals. *See Southwick v. State*, 701 S.W.2d 927, 929 (Tex.App.-Houston [1st Dist.] 1985, no pet.).