Opinion issued February 1, 2007 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00084-CR






CEDRICK T. JOHNSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 999389






O P I N I O N

 A jury convicted appellant, Cedrick T. Johnson, of aggravated sexual assault
and assessed his punishment at 25 years in prison. See Tex. Pen. Code Ann. §
22.021(a)(1)(A)(i), (2)(A)(iii) (Vernon Supp. 2006). We determine (1) whether the
trial court erred in refusing the definition of consent that appellant requested be
included in the jury charge and (2) whether the evidence was factually sufficient to
show that the complainant did not consent to sexual intercourse with appellant. We
affirm.

Facts


 The State presented evidence that appellant forced the complainant, Liliana
Ponce, into his car at gunpoint, drove to a remote area, and raped her under threat of
death. He then drove her to a Randall's grocery store, where he eventually left her
in the car while he entered the store in an attempt to withdraw money from Ponce's
bank account. When appellant entered the store, Ponce ran to a nearby business and
told the manager what had happened. The manager called the police, who arrived
shortly thereafter. Appellant was found about a week later and arrested for
aggravated sexual assault.

 In contrast, appellant claimed that he and Ponce had dated in the past, that they
had had sexual relations before, that she had consented to sexual relations on the day
in question, that he had driven her to the Randall's store to withdraw money from his
own account for her, and that she had made up the rape story because she was angry
at him for refusing to leave his wife.


Definition of Consent in the Jury Charge


 In his second point of error, appellant argues that the trial court erred in
refusing the definition of consent that he requested be included in the jury charge. (1)


 Standard of Review 


 When reviewing jury-charge error, we first determine if error actually exists in
the jury charge. See Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If
we find error, we then determine whether it harmed the appellant. Id. The degree of
harm requiring reversal depends upon whether an objection was raised to the error at
trial. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). When a timely
objection is made at trial, an appellate court will search only for "some harm." 
Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994).


 The Law


 As appellant was indicted and charged here, the State had to prove that
appellant intentionally or knowingly caused the penetration of the sexual organ of
Ponce with his sexual organ and without her consent and that, by his acts or words
occurring in Ponce's presence, he threatened to cause her death. See Tex. Pen. Code
Ann. § 22.021(a)(1)(A)(i), (2)(A)(iii). Specifically, under the indictment and charge
in this case, in order to prove that the intercourse occurred without Ponce's consent,
the State had to show that appellant compelled Ponce to submit or to participate by
threatening to use force or violence against her and that she believed that appellant
had the present ability to execute the threat. See id. § 22.011(b)(2) (Vernon Supp.
2006).


 Discussion


 Appellant requested that the trial court instruct the jury with the definition of
consent found in the "General Provisions" chapter of the "Introductory Provisions"
title of the Texas Penal Code, specifically, Penal Code section 1.07(11). (2) See Tex.
Pen. Code Ann. § 1.07(a)(11) (Vernon Supp. 2006). Texas Penal Code section
1.07(a)(11) provides: "In this code: . . ."'[c]onsent' means assent in fact, whether
express or apparent." Id. The trial court denied appellant's requested instruction,
instead instructing the jury as follows: 

An aggravated sexual assault is without the consent of the other person
if the defendant compels the other person to submit or participate by
threatening to use force or violence against the other person, and the
other person believes that the defendant has the present ability to
execute the threat.

This definition was also incorporated into the charge's application paragraph:

 Now, if you find from the evidence beyond a reasonable doubt that on
or about the 25th day of August, 2004, in Harris County, Texas, the
defendant, Cedrick T. Johnson, did then and there unlawfully,
intentionally or knowingly cause the penetration of the female sexual
organ of Liliana Ponce, by placing his sexual organ in the female sexual
organ of Liliana Ponce, without the consent of Liliana Ponce, namely,
the defendant compelled Liliana Ponce to submit or participate by
threatening to use force or violence against Liliana Ponce, and Liliana
Ponce believed that the defendant had the present ability to execute the
threat, and by acts or words occurring in the presence of Liliana Ponce,
the defendant threatened to cause the death of Liliana Ponce, then you
will find the defendant guilty as charged in the indictment.


(Emphasis added.) The definition that the trial court gave came directly from
subsection (b)(7) of Texas Penal Code section 22.011--the statute establishing the
offense of sexual assault--which definition is incorporated by reference into the
statute establishing the offense of aggravated sexual assault. See id. § 22.021(c)
(Vernon Supp. 2006) ("An aggravated sexual assault under this section is without the
consent of the other person if the aggravated sexual assault occurs under the same
circumstances listed in Section 22.011(b).").

 Generally speaking, a more specific statutory definition controls over a more
general one, if the two definitions have a similar purpose and cannot be reconciled. 
Cf., e.g., Segura v. State, 100 S.W.3d 652, 654 (Tex. App.--Dallas 2003, no pet.)
("Under the in pari materia principle of statutory construction, two statutes with
similarity of purpose must be harmonized if possible. The specific controls over the
general if the two cannot be harmonized and there is no indication that the legislature
intended to make the general act controlling."); State v. Magee, 29 S.W.3d 639, 640
(Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) (citing, among other authority, Tex.
Gov't Code Ann. § 311.026(a), (b) (Vernon 2005) (codifying instance of doctrine
of in pari materia)). The definitions of consent that are more specific to the offense
of aggravated sexual assault are those found in Texas Penal Code section 22.011(b),
which is incorporated by reference into the aggravated-sexual-assault statute. In
contrast, section 1.07(a)(11)'s definition of consent is not specific to any offense. 
Additionally, the definition of consent contained in section 1.07(a)(11) conflicts with
the definition contained in section 22.011(b)(7) in the sense that the former is broader
and less specific than the latter and could thus allow for conviction upon a wider
range of facts. See Elliott v. State, 858 S.W.2d 478, 480 n.1 (Tex. Crim. App. 1993)
(in dictum, describing definition of consent contained in predecessor to section
1.07(a)(11) as "broader" than definition contained in section 22.011(b)). Compare
Tex. Pen. Code Ann. § 1.07(a)(11) ("'Consent' means assent in fact, whether
express or apparent.") with id. § 22.011(b)(7) ("A sexual assault . . . is without the
consent of the other person if: . . . the actor compels the other person to submit or
participate by threatening to use force or violence against any person, and the other
person believes that the actor has the ability to execute the threat . . . ."). Applying
the above rule of statutory construction, we hold that the trial court did not err in
giving the more specific definition of consent found in section 22.011(b)(7), as
alleged in the indictment here, and in rejecting the more general definition that
appellant requested.

 In Pleasant v. State, an unpublished opinion in an appeal from an aggravated-sexual-assault conviction, this Court rejected an almost identical challenge that
section 1.07's definition of consent controlled over a definition contained in section
22.011(b):

 In point of error two of appellant's appeal of the sexual assault
conviction, appellant asserts the trial court erred by refusing to place in
the jury charge his written requested definition of "consent": "'Consent'
means assent in fact, whether express or apparent." [former] Tex. Pen.
Code Ann. § 1.07(a)(9) [now section 1.07(a)(11)]. . . .


 Instead the court instructed the jury, tracking the language of Tex. Pen.
Code Ann. § 22.011(b)(1)(2)[sic] . . . : 


 An aggravated sexual assault is without the consent of the
other person if the defendant compels the other person to
submit or participate by threatening to use force or
violence against the other person, and the other person
believes that the defendant has the present ability to
execute the threat.


 . . .


 Appellant was charged with aggravated sexual assault pursuant to Tex.
Penal Code Ann. § 22.021(a)(1) and (2)(A)(ii) and (iv) . . . . The sexual
assault section of the penal code carries its own specific definitions of
what is meant by "without the consent of the other person," and those
definitions are embodied in § 22.011(b). The language that was used in
the court's charge came from § 22.011(b). The general rule is that a
specific statute controls over a general statute.


Id., No. 01-90-00878-CV, 1992 WL 79686, at *2 (Tex. App.--Houston [1st Dist.]
Apr. 23, 1992, pet. ref'd) (not designated for publication; emphasis added). We now
expressly adopt the holding of the Pleasant Court. 

 To support his position, appellant relies on two opinions, which we distinguish. 
In Elliott v. State, the defendant was convicted of the offense of capital murder
committed in the course of committing aggravated sexual assault. See id., 858
S.W.2d at 480. The jury charge defined lack of consent in terms of the definition
contained in Texas Penal Code section 22.011(b)(3). See id. In dictum in a footnote,
the Court of Criminal Appeals observed:

 At the time of the offense, § 22.021 defined the offense of aggravated
sexual assault without any reference whatsoever to § 22.011. 
Accordingly, it is thus debatable whether, in the instant cause, the
meaning of "without consent" contained in the aggravated sexual assault
statute was, at the time of appellant's trial, necessarily limited to the
"exclusive" definitions contained in subsection (b) of the simple sexual
assault statute [section 22.011(b)]. . . . However, effective September,
1, 1987 § 22.021 was amended to [incorporate section 22.011(b)'s
definitions of "without consent"]. . . . Presumably, at the time of trial,
the State could have obtained a conviction upon the broader definition
of "without consent" that can be derived from Tex. Penal Code Ann.
§ 1.07(a)(9): without "assent in fact, whether express or apparent." 
Nevertheless, because the State failed to object to the court's charge, we
are constrained to measure sufficiency of the evidence according to the
only definition that was submitted. 


Id. at 480 n.1. It is based on this reasoning that the Elliott court later concluded that
the State had to show not only lack of express or apparent assent in fact (section
1.07(a)(11)), but also the specific facts required under section 22.011(b) to show lack
of consent: that is, the State had to prove the more specific definition and could not
rely exclusively on having proved the broader definition. See id. at 484. In contrast
to the situation in Elliott, here, at the time of appellant's offense, the aggravated-sexual-assault statute expressly incorporated section 22.011(b)'s definitions of
"without consent." The dictum in Elliott concerning what instruction the State might
have requested for an offense committed before the aggravated-sexual-assault statute
incorporated section 22.011(b)'s definitions thus does not apply to this case. 
Moreover, the cited dictum in Elliott implies that the only reason that the State might
have been allowed to obtain a broader definition based on section 1.07(a) is that the
aggravated-sexual-assault statute did not contain its own definition of "without
consent"; now that the aggravated-sexual-assault statute contains its own definition,
the dictum in Elliott implies that that more specific definition applies, which
definition supports our conclusion. 

 Appellant also relies on language in Contreras v. State, No. 05-05-00570-CR,
2005 WL 3528782 (Tex. App.--Dallas Dec. 27, 2005, no pet.) (not designated for
publication). In discussing the sufficiency of the evidence showing lack of
consent--an appellate challenge different from appellant's challenge here--the
Contreras court cited both the definition of consent under section 1.07(a)(11) and
certain definitions of "without consent" under section 22.011(b). See id. at *4. 
However, the Contreras court was not considering the issue presented by appellant
in the instant appeal. Furthermore, later in the same opinion, when discussing
whether any evidence supported the submission of a jury instruction on one of three
theories of lack of consent found in section 22.011(b), the Contreras court stated,
"Section 22.011(b) of the Texas Penal Code provides the statutory definitions
establishing when a sexual assault is without consent." Id. at *8. This statement
supports our conclusion, not appellant's assertion.

 Because no error occurred, we need not determine whether appellant was
harmed. See Ngo, 175 S.W.3d at 743. 

 We overrule appellant's second point of error.

Factual Sufficiency

 In his first point of error, appellant argues that the evidence was factually
insufficient to show that he had intercourse with Ponce without her consent.


 Standard of Review


 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, "[we] cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, [we] would have voted to acquit had [we] been on the jury." Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury's resolution of that conflict. Id. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

 "We may not re-weigh the evidence and substitute our judgment for that of the
[fact-finder]." King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder's evaluation of
credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407 n.5. 


 Discussion


 As noted above, under the charge given here, in order to prove that the sexual
intercourse occurred without Ponce's consent, the State had to show that appellant
compelled Ponce to submit or to participate by threatening to use force or violence
against her and that she believed that appellant had the present ability to execute the
threat. See Tex. Pen. Code Ann. § 22.011(b)(2). The State presented the following
evidence to carry this burden. According to Ponce, she did not know appellant before
the assault. Appellant abducted her at gunpoint, (3) pointed the gun at her at all times,
threatened to kill her, drove her to a remote location, forced her to have anal and
vaginal sex while bent face down over the trunk of his car, and drove her to a
Randall's store in order to take money from her account, at which point she escaped. 
Ponce thought that appellant was going to kill her. When the investigating officer
met with Ponce shortly after her escape, she was crying, "had a hard time talking,"
and appeared "very, very scared," "real [sic] emotional," and "embarrassed." Ponce
was also "shaken up" and "afraid to talk" about the incident even a week later, when
the police took her statement. Although Ponce's rape-kit examination did not reveal
injury or trauma to her vagina or anus, the sexual-assault nurse examiner who
performed the rape-kit examination opined that this is not an unusual or unheard-of
result in sexual-assault cases. Additionally, semen was collected during vaginal and
anal swabs of Ponce, which fact contradicts appellant's claim at trial that he withdrew
before ejaculation and that he did not have anal intercourse with Ponce. The DNA
profile of the semen collected from the vaginal and anal swabs of Ponce matched
appellant's DNA profile. Although there were no visible injuries on Ponce, the
investigating officer testified that, in his experience, the lack of physical injury does
not necessarily mean that no sexual assault occurred, and Ponce testified that
appellant had not hit her. Although Ponce did not tell her fiancé that she had been
raped, she explained that she had not done so because she was "ashamed." When
appellant was eventually stopped in the car that had been in the assault on Ponce, he
had in his car the BB gun that Ponce identified at trial as having been used by
appellant during the assault.

 In support of his factual-sufficiency challenge, appellant relies on the following
evidence. Appellant testified that he and Ponce had dated before, that she
consensually entered his car, that she suggested the remote location to which they
drove, that she consented to have intercourse with him, that he never pointed a gun
at or threatened her at any time, that he drove her to Randall's in order to withdraw
money for her, that they had had consensual intercourse on more than one occasion,
and that Ponce had accused him of rape because she was angry at appellant for his
refusing to leave his wife. The investigating officer opined that it would be difficult,
though not impossible, to abduct someone at gunpoint from the public area from
which Ponce had said that appellant had abducted her. The investigating officer also
did not see any injuries on Ponce, and, during the rape-kit examination, no trauma
was found to her vagina or anus. Ponce did not tell her fiancé that she had been
raped, even though he picked her up from the hospital after the incident. (4) Ponce
described her attacker and his vehicle to the police only generally, yet she was able
positively to identify appellant in a police line-up only a week later. Additionally,
Ponce could not tell the officers the exact location of the street on which the attack
occurred. Semen from two men was found on Ponce's underpants. Furthermore,
although Ponce testified that she had left her purse and papers with her address and
identity in appellant's car after the assault, the State presented no evidence that
appellant had used that information afterwards. Finally, after he had been identified
as a suspect, appellant generally cooperated and was arrested without incident.

 Appellant argues both that the State's evidence was weak and contradictory
and that his own version of events was more credible than Ponce's. Appellant's
arguments are based on credibility determinations and on considerations of what
weight to give certain evidence, which matters the jury was entitled to resolve as it
chose. See King, 29 S.W.3d at 562; Cain, 958 S.W.2d at 407 n.5, 408-09. We hold
that the State's evidence was not so weak as to render the verdict clearly wrong or
manifestly unjust and that the verdict was also not against the great weight and
preponderance of the evidence. We thus hold that the evidence was factually
sufficient to support the verdict. 

 We overrule appellant's first point of error.

Conclusion

 We affirm the judgment of the trial court.




 Tim Taft

 Justice

 

Panel consists of Justices Taft, Alcala, and Hanks.


Publish. See Tex. R. App. P. 47.2(b).

 
1. We discuss appellant's second point of error first because, if appellant were
correct that the trial court should have used the definition of consent that he
requested, rather than the one that the court gave, then we would have to
measure the sufficiency of the evidence (a challenge raised in appellant's first
point of error) against appellant's proposed definition of consent, as the
hypothetically correct charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997) ("Hence, [legal] sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case. Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's
theories of liability, and adequately describes the particular offense for which
the defendant was tried."); McKinney v. State, 177 S.W.3d 186, 197 n.8 (Tex.
App.--Houston [1st Dist.] 2005) (applying Malik to factual-sufficiency
challenge), aff'd on other grounds, 207 S.W.3d 366 (Tex. Crim. App. 2006).
2. Actually, appellant requested two instructions: the definition of consent found
in Texas Penal Code section 1.07(a)(11), and a defensive charge under Texas
Penal Code section 22.06(1), entitled "Consent as a Defense to Assaultive
Conduct." See Tex. Pen. Code Ann. §§ 1.07(a)(11), 22.06 (Vernon 2003 &
Supp. 2006). On appeal, appellant does not pursue the denial of his requested
defensive charge under section 22.06.
3. The gun that Ponce identified at trial as the one that appellant used was
actually a "BB" gun, but Ponce testified that she had not known that it was not
a real gun at the time of the sexual assault. Also, one of the investigating
officers testified that a layperson viewing the BB gun "would believe it was a
gun."
4. In his brief, appellant states that Ponce "told no one she was raped" (emphasis
added), but the record does not support this assertion.