COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 ANDRES ZUBIA, 
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 No. 08-09-00309-CR
 
 
 
 
 Appellant,
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 Appeal from
 
 
 
 
 v. 
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 171st District
 Court
 
 
 
 
  
 
 
 §
 
 
  
 
 
 
 
 THE STATE OF TEXAS,
 
 
  
 
 
 of El Paso
 County, Texas
 
 
 
 
  
 
 
 §
 
 
  
 
 
 
 
 Appellee.
 
 
  
 
 
 (TC# 20070D04697)
 
 
 
 
  
 
 
 §
 
 
  
 
 


 

O P I N I O N

 

            Andres Zubia was tried by a jury,
found guilty, and convicted of robbery.  In
accordance with Appellant’s election, the jury assessed punishment and
sentenced him to twelve years’ confinement. 
For the reasons that follow, we affirm. 

FACTUAL SUMMARY

            The indictment charged that on or
about September 29, 2007, Appellant:

[W]hile in the
course of committing theft and with the intent to obtain and maintain control
of property intentionally, knowingly, and recklessly cause bodily injury to PENNIE
STONE by dragging PENNIE STONE with a motor vehicle.

 

Prior to
trial, the State gave notice of its intent to introduce extraneous offenses,
including evidence that Appellant was a Barrio Azteca gang member and had acted
in furtherance of the purposes of that gang. 


            On September 29, 2007, Jean Kuttner and
her daughter Pennie Stone went shopping at Costco in central El Paso.  Around 1:30 p.m., the women exited the store
and headed to their truck to load the groceries.  Kuttner stood next to the vehicle and held
the shopping cart, which contained her oxygen tank and Stone’s purse, while
Stone opened the tailgate.  Suddenly, Kuttner
felt something hit her and throw her sideways. 
She initially thought she had been hit by a car, but then she felt an arm
around her neck and someone grabbed her daughter’s purse.  Kuttner yelled to her daughter.  Stone took off running after the purse
snatcher who was later identified as David Trejo.  

            After Trejo grabbed Stone’s purse,
he ran straight ahead across about three rows of parked cars, “straight back
from the end gate.  Kuttner was following
her daughter and saw a small black SUV come “flying up” in the parking
lot.  The vehicle pulled up directly in
front of Trejo’s path and came to an abrupt stop.  The driver of the SUV, later identified as
Appellant, reached over to open the door so that Trejo could quickly enter the
vehicle.

By this time, Stone had managed to grab her purse strap and the back of
Trejo’s neck.  She continued to hold on
as Trejo climbed in the SUV.  The vehicle
took off at a high rate of speed with Stone halfway inside the car and still
holding on to Trejo and her purse strap. 
Kuttner witnessed Stone’s legs become tangled and watched her lose her
footing, causing Stone to be “drug along” by the vehicle.  When Stone finally fell to the ground, one of
the SUV’s tires ran over her leg, but the vehicle continued driving away at a
high rate of speed.  At trial, Kuttner
was unable to personally identify Appellant as the driver.

            On cross-examination, Kuttner
admitted that she could not actually see whether Appellant’s hand was on the
door handle.  However, she remained
confident in her assertion that she saw the driver lean over and open the door
for Trejo.  Defense counsel challenged
that since there was no way she could actually see Appellant’s hand on the
inside door handle, it was impossible for her to tell whether Appellant was
trying to open the door or to keep the door closed.  In response Kuttner testified, “Well, it was
closed until he bent over and threw it open.”

            Stone also testified at trial.  She and her mother were about to load
groceries when she saw a man reach into the cart and simultaneously heard her
mother saying, “he’s grabbing your purse.” 
Stone took off running after the man. 
She too testified that Trejo ran straight across three rows of parked
vehicles.  Stone caught up with him and
grabbed his arm with one hand and her purse with the other.  Stone then saw a car “come zipping up the
aisle.” She identified Appellant as the driver of the vehicle, and claimed she
saw Appellant lean over and open the door for Trejo.  When Trejo jumped in, Stone was still holding
on to her purse and she ended up halfway inside the SUV with one arm entangled
in her purse strap.  As the car drove off
and Stone attempted to run alongside it, Trejo yanked on her purse, trying to
break the purse free from her grip.  He
eventually succeeded and she fell to the ground.  

            Detective Jose Baca testified at
that he was off duty and shopping at Costco on the day in question.  As he was parking his car, he witnessed a man
later identified as Trejo take a purse from a woman and then run through the
parking lot.  At that point, he reversed
his vehicle and drove down one of the aisles, keeping an eye on Trejo.  He saw a black SUV, “intentional[ly] slowing
down so the guy running could get in the vehicle.”  Detective Baca watched Stone catch up to
Trejo and saw Trejo jump into the SUV.  Detective
Baca then called in the incident to police communications.  He provided a description of Trejo and a
license plate identification of the SUV. 
During that time, Detective Baca continued to pursue the SUV.  

            The SUV drove quickly through the
parking lot, which was heavily congested with traffic and pedestrians.  It drove down a number of side streets and
ran a couple of red stop lights along the way. 
After a while, the SUV slowed down slightly and Trejo threw a purse out
the window.  Baca stopped and retrieved
the purse and then continued his pursuit of the SUV into the Villa Allegre
Apartments.  

            Once inside the apartment complex,
Trejo exited the vehicle and took off running. 
Detective Baca followed him and yelled for him to stop, but Trejo kept
running and Detective Baca eventually lost sight of him.  Baca then drove around the apartment complex
until he saw the black SUV.  When Baca
found the vehicle, Appellant was standing beside it.  At trial, Detective Baca identified Appellant
as the driver.

            The jury charge recited that
Appellant had been indicted for robbery and instructed the jury to find
Appellant guilty if they found, beyond a reasonable doubt that Appellant: 

[E]ither acting
alone or with others as a party, as that term has been defined, did [then] and
there while in the course of committing theft, and with the intent to obtain
and maintain control of the property intentionally, knowingly or recklessly,
caused bodily injury to Pennie Stone by dragging Pennie Stone with a motor
vehicle. 

 

The charge
included several definitions as well as the following instruction on criminal
responsibility and transferred intent: 

A person is
criminally responsible for a result that would not have occurred but for his
conduct operated either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result of the conduct of
the act is clearly insufficient. 

 

A person is
nevertheless criminally responsible for causing a result if the only difference
between what actually occurred and what he desired, contemplated, or risked if
that a different offence [sic] was committed or a different person or property
was injured, harmed or otherwise affected.  A person is criminally responsible as a party
to an offense if the offense is committed by his own, by the conduct of another
for which he is criminally responsible or by both.  

 

The charge
also included an instruction on the law of the parties:

Each party to an
offense may be charged with the commission of the offense.  

 

A person is
criminally responsible for an offense committed by the conduct of another if,
acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.

 

Mere presence alone
will not make a person a party to an offense.

 

In a prosecution
in which a defendant’s criminal responsibility is based on the conduct of
another, the defendant may be convicted on proof of commission of the offense,
and that he was a party to its commission, and it is no defense that the person
for whose the conduct the defendant is criminally responsible has not been
prosecuted, convicted or is given immunity from prosecution.

 

After
deliberations, the jury returned its verdict finding Appellant guilty of
robbery, as charged.  During the punishment phase, the State presented
evidence that Appellant and Trejo had been and currently were members of the
Barrio Azteca prison gang.  The State also
presented evidence of Appellant’s four prior criminal convictions.  

Appellant brings three issues for review. 
In Issue One, he challenges the legal sufficiency of the evidence to
support his robbery conviction.  In Issue
two, he complains that he was denied due process of law because the trial court
deprived him of his ability to argue his defense to the jury.  Finally, in Issue Three, Appellant argues that
the trial court erred during the punishment phase by allowing the State to
admit evidence of wrongful conduct without providing proper notice.

LEGAL SUFFICIENCY

            In Issue One, Appellant maintains
that the evidence is insufficient to support his conviction for robbery as a
matter of law because there is no evidence that he aided in the theft component
and/or the assaultive component of the robbery offense.  He also contends that there is no evidence demonstrating
his awareness that Trejo had either committed or attempted to commit a
theft.   

            In a legal sufficiency review, we
review all the evidence in the light most favorable to the verdict and
determine whether any rational juror could have found all of the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318-19,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Villarreal v. State, 286 S.W.3d
321, 327 (Tex.Crim.App. 2009); Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007).  On appeal, we
consider all admitted evidence regardless of whether it was admissible or
inadmissible.  Clayton v. State,
235 S.W.3d 772, 778 (Tex.Crim.App. 2007); Wilson v. State, 7 S.W.3d 136,
141 (Tex.Crim.App. 1999).  Although we
consider all evidence presented, we may not re-weigh the evidence and
substitute our judgment for that of the fact finder.  King v.
State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).  In conducting our review, we must give
deference to “the responsibility of the trier of fact fairly to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2789; Brooks v. State,
323 S.W.3d 893, 899 (Tex.Crim.App. 2010). 


            A person commits the offense of
robbery if, in the course of committing a theft and with the intent to obtain
or maintain control of the property, he intentionally, knowingly, or recklessly
causes bodily injury to another.  Tex.Pen.Code Ann. § 29.02(a)(1)(West 2011).  “In the course of committing theft,” is
defined as, “conduct that occurs in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of theft.”  Tex.Pen.Code
Ann. § 29.01(1).  

            As
we have noted, the jury charge included an instruction on the law of parties.  Under the law of parties, a person is
criminally responsible for the conduct of another if, “acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense.”  Tex.Pen.Code
Ann. § 7.02(a)(2)(West 2011).  The
evidence must show that at the time of the offense, the parties were acting
together, each contributing toward the execution of a common purpose.  McKinney v. State, 177 S.W.3d 186, 197 (Tex.App.--Houston [1st
Dist.] 2005, pet. granted), citing Ransom
v. State, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994).  “In determining whether a defendant participated
in an offense as a party, the court may look to events occurring before,
during, and after the commission of the offense, and may rely on actions of the
defendant which show an understanding and common design to do the prohibited
act.”  Ransom, 920 S.W.2d at 302, citing
Cordova v. State, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985), cert. denied, 476 U.S. 1101, 106 S.Ct.
1942, 90 L.Ed.2d 352 (1986).  Party
status may be proven through circumstantial evidence.  Ransom,
920 S.W.3d at 302.  

            Appellant does not dispute that he
drove the black SUV, which effectively served as the getaway vehicle, nor does
he dispute that Trejo committed an offense. 
Instead, he contends that there is no evidence that Appellant “aided in
the entire offense, that is, both the theft and the assaultive components of
the charged robbery.”  

            At trial, the jury heard testimony
from Kuttner, Stone, and Detective Baca.  Kuttner and Stone both testified that after
grabbing the purse, Trejo ran straight across three rows in the crowded parking
lot and directly toward the spot where Appellant, driving quickly, pulled
up.  Detective Baca testified that
Appellant slowed down, “actually like intentional slowing down so the guy
running could get in the vehicle,” and all three witnesses testified that
Appellant threw open the door for Trejo to get inside and then sped off at a
high rate of speed.  Additionally,
Detective Baca followed the SUV from the parking lot and told the jury that
Appellant took several side streets and ran a few red lights.

            Appellant concedes that Detective
Baca’s testimony “may indicate an intent to facilitate the flight.”  But he further argues that absent any
evidence that he knew that Trejo had committed or attempted to commit a theft,
the evidence is insufficient to prove that Appellant aided the flight to
facilitate the crime.  In support of his
argument, Appellant relies on Scott v.
State, 946 S.W.2d 166 (Tex.App.--Austin 1997, pet. ref’d).  There, the defendant was driving a vehicle
with several passengers, one of whom had a gun. 
Scott, 946 S.W.2d at 168; Faz v. State, No. 03-99-00823-CR, 2001
WL 101508, at *5 (Tex.App.--Austin, Feb. 8, 2001, pet. ref’d)(not designated
for publication).  The passengers asked
the defendant to pull over behind some apartments while they ran into a store.  The defendant complied and stayed in the
vehicle listening to music while the passengers went inside.  See
Scott, 946 S.W.2d at 168; Faz,
2001 WL 101508, at *5.  The driver did
not have a view inside the store.  See Scott, 946 S.W.2d at 168; Faz, 2001 WL 101508, at *5.  A short time later, the passengers returned
to the vehicle and told the defendant to go. 
See Scott, 946 S.W.2d at 168; Faz, 2001 WL 101508, at *5.  Once the defendant was driving away, the
passengers told him they had robbed the store, there had been a shooting, and
they had $100.  See Scott, 946 S.W.2d at 168-69; Faz, 2001 WL 101508, at *5. 
The jury charge instructed the jury that to find the defendant guilty, it
must find beyond a reasonable doubt that the defendant entered into an
agreement and a conspiracy with the co-defendants to commit the offense of
robbery.  See Faz, 2001 WL 101508, at *5. 
The court of appeals held that the evidence was legally insufficient to
convict the defendant as a party because there was no evidence that he agreed
to become a party to the offense by acting as a lookout driver.  See
Scott, 946 S.W.2d at 170. 

            Contrary to Appellant’s assertion, Scott does not stand for the proposition
that, standing alone, proof that an accused was present at the scene of the
crime or assisted the primary actor in making his getaway is insufficient.  In fact, several courts have found evidence
showing a defendant drove the getaway car after a robbery is legally sufficient
to uphold a conviction as a party to the offense.  See
Thompson v. State, 697 S.W.2d 413, 417 (Tex.Crim.App. 1985), overruled on other grounds by Ex parte
Patterson, 969 S.W.2d 16 (Tex.Crim.App. 1998); Webber v. State, 757 S.W.2d 51, 55-56 (Tex.App.--Houston [14th
Dist.] 1988, pet. ref’d)(where a witness testified that the robber was dropped
off from the same car in which he later fled, saw the appellant inching his car
forward with the lights off, and saw someone inside the car making room for the
robber before the car sped away, the evidence was legally sufficient to show
appellant drove the getaway car and therefore committed an act which aided the
robber in committing aggravated robbery).

            In viewing all the evidence in the
light most favorable to the verdict, the jury could have rationally concluded,
beyond a reasonable doubt, that Appellant was a party to the offense.  The jury heard testimony that Appellant saw
Trejo running toward his vehicle with a woman’s purse in hand and a woman
chasing behind him; he pulled up, leaned over to open the door; and then sped away
while Stone was still grabbing onto her purse. 
Because the evidence is legally sufficient to sustain the conviction, we
overrule Issue One. 

IMPROPER DENIAL OF JURY ARGUMENT

            In Issue Two, Appellant argues the
trial court deprived him of his constitutional right to due process of law
because he was not allowed to argue his defensive theory to the jury.  This argument is based the trial court’s
decision to sustain an objection made by the State during defense counsel’s closing
argument, and a subsequent instruction to disregard.

            The trial court has broad discretion
in controlling the scope of closing argument. 
See Lemos v. State, 130 S.W.3d
888, 892-93 (Tex.App.--El Paso 2004, no pet.). 
However, a criminal defendant’s right to counsel includes his right to
have his theory of the case argued vigorously to the jury, and the trial court may
not prevent defense counsel from making a point essential to the defense.  See id.  That said, only when the trial court
restricts counsel from making an argument that he was legally entitled to make,
is it considered a deprivation of counsel. 
See id., citing McGee v. State,
774 S.W.2d 229, 238 (Tex.Crim.App. 1989), cert.
denied, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); Jackson v. State, 992 S.W.2d 469, 476
(Tex.Crim.App. 1999).  

            There are four categories of proper
jury argument:  (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer to the
argument of opposing counsel; and (4) a plea for law enforcement.  See
Berry v. State, 233 S.W.3d 847, 859 (Tex.Crim.App. 2007).  Defense counsel has the legal right to argue
any theory supported by the evidence, including all inferences from the
evidence that are legal, fair, and legitimate. 
Brown v. State, 955 S.W.2d
276, 279 (Tex.Crim.App. 1997); Melendez
v. State, 4 S.W.3d 437, 442 (Tex.App.--Houston [1st Dist.] 1999, no pet.), overruled on other grounds by Small v. State,
23 S.W.3d 549 (Tex.App.--Houston [1st Dist.] 2000, pet. ref’d).  To determine whether an argument falls within
one of the four categories, we consider the argument in light of the entire
record.  Magana v. State, 177 S.W.3d 670, 674 (Tex.App.--Houston [1st Dist.]
2005, no pet.).  

            The following summarizes the events
which transpired during Appellant’s closing argument and formed the basis for
this issue on appeal: 

[Defense Counsel]:  When I talked to Juror Number 20 during voir
dire and I asked him about that situation if we went down to the grocery store
and I wanted to buy a six pack of beer and we were friends.  I go in and I rob the store, the next thing
you know I told him, Hey I just robbed the store and that’s why we are both
getting arrested.  You know at least in
that scenario you knew that me and him were friends.  Okay. 
You knew that, at the least, and that would really help.  You don’t know that here.  You don’t know anything about this.  This is just a guy who is present when
another guy runs into his car.  

 

At that point
the State objected and, before stating the basis of the objection, asked to
approach the bench.  

[Prosecutor 1]:  He needs to realize that he has just waived
his client’s Fifth Amendment Right.  He
just opened the door to everything. 

 

[Defense Counsel]:  I did not. 

 

[Prosecutor 1]:  He’s testifying for the defendant now.  You are not allowed to hide behind that, come
in and testify in closing because the State is at least allowed to rebuttal to
explain that he opened the door. 

 

[The Court]:  Well, I am not going to allow it.  I will ask them to disregard your argument.

 

[Defense Counsel]:  I told the jury what the evidence has shown
today.  

 

[Prosecutor 2]:  It leaves a false impression, we have to prove
or --

 

[The Court]:  Keep it down. 
I know -- I prohibited them from bringing in the gang affiliation that
was a motion in limine.  I am going to
ask them to disregard the last statement.  


  

At
that point the bench conference concluded and the trial court sustained the
State’s objection for the record and asked the jury to “disregard that last
statement made by this attorney.”  

On
appeal, Appellant refers to this exchange as a “bizarre colloquy.”  He contends that, “[s]omehow, the prosecutor
convinced the trial judge that the defense argument was improper as a waiver of
Appellant’s right not to testify,” and he refers to the State’s objection as a “truly
bizarre objection that has no logical force or effect.”  Appellant asserts that his statement that, “[t]his
is just a guy who is present when another guy runs into his car,” was simply
stating his defense to the jury - that he was not a party to the offense.  He argues further that by instructing the
jury to disregard his argument, the trial court “told the jury to find Appellant
guilty.”

            As the State points out, the record
reflects several attempts by the defense to argue that Appellant and Trejo did
not know each other.  The record also
reflects that after discussing the issue, defense counsel refrained from taking
any action to back up his inferences that Appellant and Trejo did not know each
other, presumably to avoid opening the door and allowing the State to rebut the
defensive theory by introducing evidence that the two men knew each other
through their shared gang affiliation.

            The essential question is whether
the trial court abused its discretion when it instructed the jury to disregard
defense counsel’s statement.  There was
no direct evidence that Appellant and Trejo did not know each other.  Therefore, the trial court did not abuse its
discretion in finding defense counsel’s statement that, “[t]his is just a guy
who is present when another guy runs into his car,” was an improper jury
argument.  The statement:  (1) does not summarize the evidence, as there
was no direct evidence regarding the relationship between Trejo and Appellant;
(2) is not a reasonable deduction from the evidence presented, which showed
that Trejo ran directly to Appellant’s car and Appellant slowed down and was
seen opening the door to let Trejo in the car; (3) was not an answer to the
argument of opposing counsel; and (4) was not a plea for law enforcement.  See
Berry, 233 S.W.3d at 857.  

            Even assuming that the trial court
erred, we perceive no harm because defense counsel was not deprived of the
ability to fully develop and argue his defensive theory.  The record reflects that defense counsel was
allowed to, and did, vigorously argue that:

·        
the evidence would show Appellant had only
gone to Costco to get boxes for an upcoming move; 

 

·        
Costco kept boxes at the back of the store,
presumably to explain why Appellant drove up from the back of the store; 

 

·        
the parking lot was crowded and therefore it was
reasonable for Appellant to slow down; 

 

·        
it was impossible for Kuttner to see Appellant’s
hand on the handle and therefore impossible to tell whether Appellant was
opening the door or holding it closed; 

 

·        
the jury could not tell the exact nature of the
relationship between Appellant and Trejo, stating in part, “[y]ou don’t [know]
anything about this;” and 

 

·        
Appellant’s “mere presence” did not make him a
party to the offense.  

 

Finally, the
jury charge included an instruction on the law of the parties which stated
that, “[m]ere presence alone will not make a person a party to an offense.”  Finding no abuse of discretion, we overrule Issue
Two. 

PUNISHMENT PHASE

            In Appellant’s third and final
issue, he complains that evidence of his prior wrongful conduct was admitted
although the State failed to provide notice to the defense.  We review evidentiary rulings for an abuse of
discretion.  McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005).  A trial court abuses its discretion when its
decision clearly lies outside the zone of reasonable disagreement.  Id.

            During the punishment phase,
evidence may be offered as to any matter the court deems relevant to
sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, the circumstances of the
offense for which he is being tried, and any other evidence of an extraneous
crime or bad act that is shown beyond a reasonable doubt by evidence to have
been committed by the defendant or for which he could be held criminally
responsible.  See Tex.Code Crim.Proc.Ann.
art. 37.07, § 3(a)(1)(West 2006).  Upon timely
request, notice shall be given to the defense. 
Tex.R.Evid. 404(b); Gonzalez v. State, 337 S.W.3d 473, 485
(Tex.App.--Houston [1st Dist.] 2011, pet. ref’d), quoting Article 37.07 § 3(g);  Hernandez
v. State, 176 S.W.3d 821, 822 (Tex.Crim.App. 2005); McDonald, 179 S.W.3d at 577. 
The purpose of the notice requirement is to prevent surprise.  See
Gonzalez, 337 S.W.3d at 485.  

            Prior to trial, the State filed a
supplemental notice of intent to introduce extraneous offenses, which included
evidence that Appellant and David Trejo were members of the Barrio Azteca prison
gang, and “ha[d] done numerous acts in furtherance of the purposes of that
gang.”  But the notice did not indicate
that the State intended to introduce evidence that Appellant and Trejo had also
previously been members of the Los Fatherless street gang.  Consequently, Appellant contends that evidence
of membership in the street gang was inadmissible.  He also argues that the State acted in bad
faith, that the prosecutors’ conduct established a wanton and reckless
disregard for Appellant’s right to prepare his punishment case, that the
defense was greatly surprised, and that counsel’s ability to defend Appellant
was hindered by the lack of notice.  

            Admitting evidence of extraneous
offenses when the State has not provided proper notice is non-constitutional
error.  Hernandez, 176 S.W.3d at 824; Gonzalez,
337 S.W.3d at 485, citing Ruiz v. State, 293 S.W.3d 685, 695
(Tex.App.--San Antonio 2009, pet. ref’d); Roethel
v. State, 80 S.W.3d 276, 281 (Tex.App.--Austin 2002, no pet.).  We thus conduct a harm analysis under Texas
Rule of Appellate Procedure 44.2(b).  McDonald, 179 S.W.3d at 578; Allen v. State, 202 S.W.3d 364, 369
(Tex.App.--Fort Worth 2006, pet. ref’d)(finding error under Rule 404(b) and
then conducting a harm analysis under Rule 44.2). 

            An appellate court may reverse a
judgment of conviction or punishment based on non-constitutional error only if
that error affected the defendant’s substantial rights.  Tex.R.App.P.
44.2(b).  A substantial right is affected
when the error had a substantial and injurious effect or influence in determining
the jury’s verdict.  Hernandez, 176 S.W.3d at 824, citing
King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); Allen, 202 S.W.3d at 369 (explaining
that error is harmless if the evidence is “substantively admissible” unless the
error had a substantial influence on the jury’s verdict and the defendant was
surprised by the evidence).  The
conviction should be upheld if, after examining the whole record, we have a
fair assurance that the error did not influence the jury or had but a slight
effect.  McDonald, 179 S.W.3d at 578.  When substantively admissible Rule 404(b)
evidence is improperly admitted because of the State’s failure to comply with notice
requirements, the error may have had a substantial effect or influence on the
jury’s verdict, but it cannot be said that this effect or influence was ‘injurious’
if the defendant was not surprised.  Hernandez, 176 S.W.3d at 825.  

            Even assuming that the State’s
failure to provide notice was error, Appellant has not shown unfair surprise and
there is no evidence of bad faith.  See Gonzalez, 337 S.W.3d at 485; see also Hernandez, 176 S.W.3d at 825; Sharp v. State, 210 S.W.3d at 839-40
(Tex.App.--Amarillo 2006, no pet.)(finding any error in admitting evidence of
extraneous offense during punishment phase harmless despite failure to provide
notice because appellant did not contend that witness’s testimony caused him
surprise, that omission from notice prevented him from preparing a defense, or
that had he known, his defense would have differed); see also McDonald, 179 S.W.3d at 578 (holding that error in
admitting evidence particular uncharged misconduct involving complainant’s
cousin, without notice, in a prosecution for indecency with a child did not
prejudice the defendant and was harmless, where the defendant had opportunity
to cross-examine complainant, the source of evidence at issue, and notice of
particular extraneous misconduct at issue would not have affected defendant’s
trial strategy; defendant’s strategy was to discredit complainant and her
ability to remember specific details, and defendant received notice that state
would offer evidence concerning his conduct with cousin and did not object to
admissibility thereof). 

            At trial, Officer Andres Sanchez
testified that Appellant was affiliated with the Los Fatherless street gang prior
to becoming a member of the Barrios Aztecas prison gang.  Defense counsel had the opportunity to
cross-examine Officer Sanchez about the source of the information but declined
to do so, choosing instead to question Sanchez about Appellant’s affiliation
with the Aztecas.  The record reflects a defense strategy designed
to show that although Appellant had been a high-ranking member of that gang, he
had changed his ways and was no longer a gang member.  If Appellant was surprised by the testimony
concerning the Los Fatherless affiliation, it was only as to the additional allegation
that Appellant was a member of a street gang first.  As stated in McDonald, “It is hard to imagine that his defense would have been
altered in any meaningful way,” and “had there been legitimate surprise that
required a re-evaluation of trial strategy, the appellant could have requested
a continuance.”  McDonald, 179 S.W.3d at 578.  Here, defense counsel did not cross-examine
Officer Sanchez as to the Los Fatherless affiliation, he did not request a
continuance, and there is no evidence that notice as to the extraneous
misconduct at issue would have affected the defensive strategy.  See id.  

            Appellant
has failed to show that any error in the admission of testimony regarding his
affiliation with Los Fatherless street gang affected his substantial rights.  See
Gonzalez, 337 S.W.3d at 485;
Hernandez, 176 S.W.3d at 825.  We overrule Issue Three and affirm the
trial court’s judgment. 

 



January 25, 2012                                             _________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)