

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARTREIL PRICE, | § | No. 08-22-00093-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20200D03812) |

## MEMORANDUM OPINION

Appellant Martreil Price was convicted of one count of felony murder, two counts of aggravated assault with a deadly weapon, and one count of unlawful possession of a firearm by a felon. Raising five issues on appeal, Appellant contends the evidence was legally insufficient to support the count of felony murder (Count I) and one count of aggravated assault with a deadly weapon (Count II); the trial court committed jury-charge error requiring remand of Counts I and II; and the trial court erred in overruling his objection to the State's purportedly improper jury argument thus-depriving Appellant of a fair trial. We disagree with Appellant and affirm the trial court's judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a backyard party turned shoot-out. We provide context by rewinding to earlier that day. On June 27, 2020, while at home on a telephone call, Appellant became upset to learn that his ex-girlfriend (Essence) had "jumped" his girlfriend (Renee Bowel). At the time, Appellant resided with Bowel and two other couples: Tabatha Mercedes Logsdon and Nasir Dante Gillespie, and Maddy Martin and Chris Thomas. Around the time of Appellant's phone call, Chris Thomas and another man who sometimes also resided with Appellant—Justin Lajes—arrived at the house. Shortly thereafter (sometime between 1:30 and 2:00 p.m.), Appellant, Gillespie, Thomas, and Lajes left together purportedly to purchase marijuana from a Martin Starks in Northeast El Paso. All were armed except Gillespie—Appellant was carrying what appeared to be a tan- or black-and-tan colored .45 F & M; Thomas had a 9-millimeter Springfield Expedition; and Lajes had a 9-millimeter Smith & Wesson.

On the way, the group stopped at Essence's house, where Appellant argued with her about her fight with Bowel before arriving at Patricia Silva and Starks's northeast residence. Upon arrival, Silva directed them to the backyard through the side gate. Marcus Dear, James Joseph Pounds, and Dominick Walker were among a group that had gathered for a cookout where there was drinking, smoking marijuana, and shooting dice.

Appellant and his group entered the backyard with their guns at their sides (except for Gillespie). Dear was standing with Starks in the backyard and attempted to diffuse the situation, asking Appellant and Thomas to calm down and remove their guns from the premises, pointing out there were children in the house. Appellant brandished his gun and exclaimed, "Where's that Kay bitch at?"[1] Walker, who was sitting in the back patio, told Appellant something to the effect

---

[1] Kayla Reed, the person who informed Appellant by telephone of the fight between Essense and Bowel, had stopped by the cookout earlier but was not present at the time.

2

of, "This would be different if I had my gun," or, "Damn, I wish I had my gun," to which Appellant replied, "You don't know who I am. I'll fucking kill you," then pointed his gun at Walker and cocked it. Alarmed by the commotion, Pounds went into the house to the kitchen where Silva handed him her .40 caliber Smith & Wesson.

Pounds put the gun in this pocket, and as he walked back through the patio door, he saw Appellant try to "pistol-whip" Walker. Walker attempted to deflect the blow by throwing up his hands whereupon the gun went off striking Pounds above his left knee. Witness testimony varied on whether Walker successfully blocked the strike but was consistent in articulating that Appellant struck at Walker with his gun. The bullet grazed Walker's face, and the blow of the gun against his face broke Walker's tooth. While Walker tried to get away, Pounds screamed, "You shot me, motherfucker!" But before Walker made it into the house, Appellant shot him twice. Pounds returned fire at Appellant but missed then retreated into the house.

Appellant shot into the house at Pounds from the outside, while Thomas began firing into the house toward Walker through a window then ran to cover the front and began firing from there. Pounds returned fire toward the front of the house, deploying several rounds. Thomas shot Silva in the head, whereupon she fell on top of Walker, who immediately knew she was dead. When the shooting ceased, Pounds went to Silva, and saw she was dead. Afraid of being caught in possession of a gun as a convicted felon, Pounds hid Silva's gun in the backyard.

Appellant, Gillespie, Thomas, and Lajes frantically returned to Appellant's house. Appellant and Thomas berated Lajes for not having fired his gun. Gillespie heard Thomas yell about Lajes "next time that they shoot and he doesn't shoot, that they'll shoot him." Afraid of retaliation, they fled to Arizona where Appellant and Thomas were eventually arrested. Appellant

3

and Thomas told the group "nobody better say anything [or] they're going to get us." Appellant and Thomas disposed of their guns, which were never recovered by police.

Pounds and Walker were treated for gunshot wounds. The deputy medical examiner testified that Silva was killed instantly by gunshot wound to the head; Silva also suffered a gunshot wound to her torso, which perforated her heart and lung. The projectile recovered from Silva's skull was determined to have been fired from a "9 mm Luger caliber firearm." No evidence was presented regarding the nature and source of the projectile that pierced Silva's torso. A deformed bullet retrieved from inside of Silva's brassiere was determined to have been fired from a .40 caliber Smith & Wesson M & P semiautomatic pistol.

The jury found Appellant guilty of the felony murder of Silva (Count I), aggravated assault with a deadly weapon against Pounds and Walker (Counts II and III), and unlawful possession of a firearm by a felon (Count IV). The jury assessed punishment at nineteen-, six-, ten-, and four-years' confinement, respectively. This appeal followed.

## II.   CLAIMS OF INSUFFICIENCY OF THE EVIDENCE

Appellant contends the evidence was legally insufficient to support one count of aggravated assault with a deadly weapon (Count II—involving Pounds) and the count of felony murder (Count I). We disagree.

### A.  Standard of review

We evaluate the sufficiency of evidence supporting criminal convictions under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Viewing all evidence in the light most favorable to the verdict, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). We

4

remain vigilant of the fact that the jury is the sole judge of the credibility of the testimony and evidence presented and may choose to believe all, some, or none of it; the jury weighs the evidence, resolves conflicts in testimony, and may draw reasonable inferences therefrom. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The fact finder acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319.). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the [verdict], and therefore defer to that determination." *Id*.

Legal sufficiency of the evidence is measured by the hypothetically correct jury charge "that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). In making our sufficiency determination, we evaluate all of the evidence in the record. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

### B.  Aggravated assault with a deadly weapon

In his first issue on appeal, Appellant contends the evidence is legally insufficient to prove that his voluntary conduct caused the shooting of Pounds. Specifically, he maintains he "did not fire the gun voluntarily" because it was Walker's action in striking the gun that caused it to fire the round that hit Pounds in the leg. Appellant misconstrues the law pertaining to voluntary conduct.

5

### 1. Applicable law: voluntary act

Section 6.01 of the Texas Penal Code states that "[a] person commits an offense only if he voluntarily engages in conduct, including an act [or] an omission." TEX. PENAL CODE ANN. § 6.01(a). With regard to a voluntary act, the Texas Court of Criminal Appeals has explained that to impose criminal responsibility, the defendant's conduct must include a voluntary act, which does not necessarily go to the voluntariness of the ultimate act. *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003). Voluntariness "refers only to one's own physical body movements" and not to one's state of mind or intent in connection with the ultimate act. *Farmer v. State*, 411 S.W.3d 901, 905–06 (Tex. Crim. App. 2013) And because a physical movement is involuntary only when "is the nonvolitional result of someone else's act, was set in motion by some independent non-human force, was caused by a physical reflex or convulsion, or was the product of unconsciousness, hypnosis, or other nonvolitional impetus," it is sufficient that "a voluntary act that comprised a portion of the commission of the offense . . . even if . . . the consequences of the act were unintended." *Id.* at 906.

### 2. The evidence was sufficient to show Appellant engaged in a voluntary act

Here, Appellant engaged in the following voluntary acts: he pointed his gun at Walker; he cocked the gun; and he struck at Walker with the gun, causing the gun to fire a round into Pounds's leg. The testimony about whether Walker attempted to or successfully deflected the gun's blow to his face varied—some witnesses stated Walker "threw his hands up and, like, knocked the gun away from his head," or had "blocked it and the gun went off," while others, including Walker, stated Walker "got hit with the gun and the gun went off" and that "he [was] hit [] on the face and the gun went off." Regardless of whether Walker deflected all or part of the blow, voluntariness

6

merely requires that the accused's conduct *include* a voluntary, such as pointing or cocking a gun, or as in this case, also propelling the gun at Walker, which is undisputed. *Farmer*, 411 S.W.3d at 906. Because Appellant's voluntary acts comprised at least a portion of the overall conduct of shooting Pounds, the evidence was legally sufficient——a rational jury could have found beyond a reasonable doubt that Appellant engaged in a voluntary act in committing the aggravated assault against Pounds. *See Farmer*, 411 S.W.3d 905-06 (it is sufficient that a voluntary act comprised a portion of the commission of the offense, even if the voluntary act was accidental or its consequences were unintended); *see also Rogers*, 105 S.W.3d at 638 (for an act to be voluntary, the conduct causing the harm must "include an act" that is voluntary).

Accordingly, we overrule Appellant's first issue.

### C. Felony murder

In his third issue on appeal, Appellant argues the evidence is legally insufficient to support his conviction for the felony murder of Silva, because the State neither proved his guilt under the conspiracy theory of law of the parties nor requested a jury instruction on that theory. Notwithstanding Appellant's contentions, the charge instructed the jury as to the aiding theory of parties' liability and the State proved its felony murder case[2] on that basis.

### (1) Applicable law: felony murder, aggravated assault, and law of parties

A person commits felony murder if in the course of and in furtherance of the commission or attempt to commit a felony other than manslaughter, he commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). The

---

[2] Count I of the indictment alleged that: [Appellant] "did then and there . . . intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: shooting a firearm, that caused the death of Patricia Silva, and [Appellant] was then and there in the course of intentionally or knowingly committing a felony, to wit: Aggravated Assault, and said death of Patricia Silva was caused while [Appellant] was in the course of and in furtherance of the commission or attempt of said felony."

7

crime is "an unintentional murder committed in the course of committing a felony." *Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014) (quoting *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999)) And a person commits the felony of aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another person and uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1) and (a)(2).

Texas law allows for one actor to be criminally responsible for the conduct of another under various theories of parties' liability but does not require the State to prove its case on all theories. TEX. PENAL CODE ANN. §7.02. Relevant here, under the aiding theory of parties' liability, a person is criminally responsible for the offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . ." *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *See Duvall v. State*, 189 S.W.3d 828, 831 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (citing TEX. PENAL CODE ANN. § 7.02(a)(2)).

Parties acting together need not have an agreement in place but simply work together at the time of the offense to contribute some part toward execution of a common purpose. *Duvall*, 189 S.W.3d at 831 (citing *McKinney v. State*, 177 S.W.3d 186, 197 (Tex. App.—Houston [1st Dist.] 2005, pet. granted) *aff'd*, 207 S.W.3d 366, (Tex. Crim. App. 2006)); *Gross v. State*, 352 S.W.3d 238, 243 (Tex. App.—Houston [14th Dist.] 2011, pet. granted) *aff'd*, 380 S.W.3d 181 (Tex. Crim. App. 2012). *"In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense." See Duvall*, 189 S.W.3d at 831. Either direct or circumstantial evidence

may serve to show or infer that Appellant participated in the offense. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987) (en banc).

### (2) The evidence was legally sufficient to support Appellant's conviction as a party to felony murder under the aiding theory of parties' liability

Appellant argues the evidence is legally insufficient to support his criminal liability for the felony murder of Silva as a party both under the conspiracy theory of parties' liability [3] and the aiding theory of parties' liability.

Contrary to Appellant's assertions, the evidence was sufficient for the jury to have concluded beyond a reasonable doubt that Appellant was a party to the felony murder of Silva under the aiding theory. The jury was presented with evidence that Appellant, along with Thomas, Gillespie, and Lajes, started from their house where they armed themselves (except for Gillespie) and together went to Silva's house. They entered the backyard together with guns at their sides, where the shooting eventually commenced. After exchanging words and striking at Walker with his gun, which resulted in Pounds being shot in the leg, Appellant shot Walker twice before he ran inside the house, at which point Thomas joined Appellant in a team effort to fire gunshots from different angles into the house where, at that point, Pounds, Walker, and Silva were inside. When Thomas's gunshot struck Silva in the head, Appellant did not abandon the scene or otherwise indicate that he did not intend to participate in the aggravated assaults against the occupants of the house. *See McKinney*, 177 S.W.3d at 198 (evidence that appellant did not drive away from the scene when the principal actor first killed two of the victims and instead waited for his cohort to complete the killings, drove him away from the scene, and thereafter helped him dispose of the

---

[3] Section 7.02(b) of the Texas Penal Code, the conspiracy theory of parties liability, states: "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

handgun was evidence supporting appellant was a party under the aiding theory of parties liability). And after the gunfight, Appellant and Thomas reproached Lajes for not participating, indicating that next time, Lajes would be shot if he failed to shoot. Then Appellant fled the state with the group. Thomas, without any interference from Appellant, instructed the group to keep quiet or else risk that "they would get [them]."

The evidence in the record allowed the jury to find that Appellant and Thomas each contributed some part toward their common purpose of committing aggravated assault with a deadly weapon and an act clearly dangerous to human life, and that Appellant, by being an active participant in the gunfight, encouraged or aided Thomas in the commission of the felony murder of Silva. *See Miles v. State*, 259 S.W.3d 240, 255 (Tex. App.—Texarkana 2008, pet. struck) (evidence that appellant was an active participant in the gunfight by firing his gun supported a reasonable inference that he encouraged or aided in the commission of the felony murder, even though police were unable to identify who fired the fatal shot). Because the evidence was legally sufficient under this the aiding theory for a rational jury to find Appellant guilty beyond a reasonable doubt, it is immaterial whether the evidence was also legally sufficient to prove Appellant's guilt under the conspiracy theory of parties' liability. *See* TEX. PENAL CODE ANN. § 7.02. (enumerating multiple grounds for parties' liability, only one of which need be proven to sustain criminal responsibility).

Accordingly, we overrule Appellant's third issue.

## III.  CLAIMS OF JURY CHARGE ERROR

Appellant contends the trial court committed jury-charge error requiring remand of Counts I and II. We disagree.

## A.  Standard of review

We review claims of jury-charge error under a two-part test, first determining whether error exists, and then evaluating the harm caused by the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App.1984) (en banc) (op. on reh'g); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). The amount of harm necessary for reversal depends on whether that error was preserved in the trial court: an appellant who preserved error via jury-charge objection need only prove some actual harm. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. On the other hand, an appellant who does not object to the complained-of jury-charge error is entitled to reversal only when the totality of evidence, jury charge, arguments, and other relevant information in the record show he suffered egregious harm, i.e., that the error was so harmful it deprived the accused of a fair and impartial trial by affecting the very basis of the case, depriving him of a valuable right, or vitally affecting a defensive theory. *Stuhler v. State*, 218 S.W.3d at 719; *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171.

## B.  Omission of voluntariness jury instruction

In his second issue, Appellant complains that the trial court erred in failing to include a jury instruction on the voluntariness of his conduct in shooting Pounds (Count II) even though he did not request such an instruction and that the error caused him egregious harm warranting a new trial. We hold that because Appellant failed to preserve his complaint for review, the trial court did not err.

### (1)  Applicable law: defensive-issue jury instruction

When the evidence would support a rational jury finding as to the defense—regardless of the source, strength, or credibility of the evidence—the defendant is entitled to a requested jury

instruction on a defensive issue at trial. *Rogers*, 105 S.W.3d at 639-40; *Farmer*, 411 S.W.3d at 906; *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). Before an appellant may complain on appeal about a trial court's failure to include a defensive-issue instruction in the jury charge, there must be affirmative evidence in the record raising the defensive issue, and the appellant must have timely requested from the trial court the desired instruction. *Rogers*, 105 S.W.3d at 640

### (2) Appellant did not preserve this complaint for appellate review, therefore the trial court did not err

The parties disagree as to whether the evidence affirmatively raised an issue as to voluntariness. The State argues that the evidence did not raise an issue that Appellant's conduct was involuntary regardless of whether he intended to shoot Pounds or intended to deploy the gun or whether Walker's deflection turned the weapon toward Pounds's person and caused the gun to deploy. Appellant, on the other hand, claims the evidence affirmatively raising an issue as to voluntariness was the body movement at issue in this case, i.e., "the nonvolitional result of Walker's act, blocking the gun with his arm" that caused Pounds to be shot.

Notwithstanding whether the evidence raised a voluntariness issue, it is undisputed that Appellant did not request a § 6.01 voluntariness instruction at trial. Nonetheless, Appellant maintains he is entitled to a new trial because he suffered egregious harm from the trial court's failure to instruct the jury on voluntariness.

The Court of Criminal Appeals has treated voluntariness under § 6.01 as a defensive issue, such that regardless of whether the evidence affirmatively raised the issue, the trial court could not have erred in failing to include in the jury charge an instruction it was never asked to include. *See, e.g.*, *Farmer*, 411 S.W.3d at 905-08 (discussing issue of voluntariness under § 6.01 as a "defensive issue of voluntariness"); *Rogers*, 105 S.W.3d at 639-40 (discussing difference between defensive

12

theories of "accident" and "voluntary act"). That is the case here. Appellant did not preserve error as to a jury instruction on voluntariness. *See Vega v. State*, 394 S.W.3d 514, 519 ("A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint."); *Rogers*, 105 S.W.3d at 639.

Because error was not preserved, the trial court did not err. We overrule Appellant's second issue.

### (3)   Omission of jury instruction on conspirator theory of parties liability

In his fourth issue on appeal, Appellant asserts the trial court fundamentally erred in failing to instruct the jury on the conspirator theory of parties' liability in addition to the aiding theory. He posits that if we find the evidence legally sufficient to support his guilt for felony murder on the conspiracy theory of parties liability, he would nonetheless at least be entitled to a new trial because the jury was not specifically instructed on the conspiracy theory of parties liability, such that the jury did not "actually convict[] [Appellant] on that basis." And, he argues, the evidence was insufficient to establish guilt on the aiding theory.

The trial court is to instruct the jury on "all theories of liability requested by the State for which there is some evidence in the record." *In re State ex rel. Weeks*, 391 S.W.3d 117, 125 (Tex. Crim. App 2013). Here, the State requested an instruction on the aiding theory, and as discussed above, the evidence was sufficient to convict Appellant on that theory of liability. As such, it is of no consequence whether the evidence would have also been legally sufficient to sustain his guilt as a party under the conspiracy theory. *See Jacques v. State*, No. 08-02-00491-CR, 2004 WL 1801202, at *7 (Tex. App.—El Paso Aug. 12, 2004, pet. ref'd) (conviction as a party may be sustained on any ground authorized by indictment if it is supported by facts sufficient

to convict on the ground). Accordingly, there was no error in this regard. We overrule Appellant's fourth issue.

## IV. IMPROPER JURY ARGUMENT

In his fifth and final issue, Appellant asserts the trial court erred in overruling his objection to what he asserts was improper jury argument by the State "striking at the defendant over the shoulders of his counsel" and that the error was serious enough to deny him a fair trial.

During his rebuttal, the prosecutor stated the following:

And then Marcus Dear, he saw all four defendants come to the backyard. He saw them with guns drawn, and you heard me read back his testimony that he gave in the interview.

So all this crap that he didn't say that is bologna. It's bologna. Do not get on these rabbit trails, ladies and gentlemen.

When you're a defense attorney, you throw every darn thing and see what falls.

Have you ever--

At that point, defense counsel objected, "That's an attack on my character, Judge. That's improper argument," which objection the trial court overruled. The prosecutor continued:

Have you-all been to the Franklin trails? They have bunny trails, right? If you take a bunny trail, you get lost; but if you stick to the main trail, you're okay. And that's what we're asking you to do here.

### A. Standard of review and applicable law

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). If the trial court erred, we must determine whether the error requires reversal; Texas Rule of Appellate Procedure 44.2(b) directs this inquiry involving nonconstitutional error to whether the error had a substantial and injurious effect or influence in the jury's verdict determination. *Id.* If, "after examining the record

as a whole, [we have] fair assurance" the error did not have such an effect, we may not reverse.[4]

*Id.; Mosley v. State*, 983 S.W.2d 249, 259-60 (Tex. Crim. App. 1998) (en banc).

Proper jury argument is restricted to four areas: (1) summation of the evidence presented at trial, (2) reasonable inferences drawn from that evidence, (3) responses to opposing counsel's argument, and (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). The Court of Criminal Appeals "maintains a special concern for final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney." *Orona v. State*, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990) (en banc). To determine whether a prosecutor's comments were improper, we examine them in their full context giving due consideration to the "entire argument, not merely isolated sentences." *Robbins v. State*, 145 S.W.3d 306, 314-15 (Tex. App.—El Paso 2004, pet. ref'd) (citing *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd); *see also Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

### B. The jury argument was not improper; regardless, the statements were not so substantial or injurious as to require reversal

Appellant contends that the prosecutor's above-detailed argument "directly and unambiguously targeted defense counsel specifically for offering an insincere, frivolous, and dishonest defense . . . critici[zing] him personally for putting forward a defense that was 'crap.'"

While Appellant's characterizes the prosecutor's argument as a clear, direct, and personal criticism of defense counsel's character, this Court views the prosecutor's argument in context as an attack on counsel's defensive theory and strategy. Because defense counsel presented the

---

[4] Gleaning from federal courts, the Texas Court of Criminal Appeals has found three factors helpful in this inquiry: "(1) severity of the misconduct (the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of the conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley,* 983 S.W.2d at 259-60 (referencing *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994)) (the *Palmer* test).

evidence in one light during his argument, the State's was within its right to respond accordingly. And while the prosecutor could have chosen more appropriate, less "colorful" language, the prosecutor's comments encompassed what is permissible to address in closing argument: responses to opposing counsel's argument and comments on reasonable inferences to be drawn from the evidence. *See Jackson*, 17 S.W.3d at 673.

We find the prosecutor's argument in this case referencing rabbit trails, bologna, and throwing everything to see what sticks in response to defense counsel's argument to be akin to similar arguments calling defense counsel's arguments "hogwash," or "ridiculous," which have been found not to be improper as a personal attack on defense counsel, but rather, a criticism or attack on defense counsel's theories and strategies. *See, e.g.*, *Garcia v. State*, 126 S.W.3d at 925 (holding prosecutor's argument that defense counsel was "going to put himself before twelve citizens of this community and . . . argue that hogwash that you've heard" was merely an opinion, however colorfully stated, on the merits of defense counsel's arguments, and not a personal attack on defense counsel); *Coble v. State*, 871 S.W.2d 192, 204-05 (Tex. Crim. App. 1993) (en banc) (holding prosecutor's remarks that defense counsel was arguing "something ridiculous" in response to defense counsel's argument was not an improper argument strike at defendant over shoulders of defense counsel).

The prosecutor's comments here criticized the defensive strategy of raising many arguments in hopes the jury would seize on one of them, which courts have found is not improper jury argument. *See, e.g., Garcia v. State*, No. 13-19-00318-CR, 2020 WL 7757377, at *5 (Tex. App.—Corpus Christi Dec. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (holding prosecutor's argument that "sometimes what defense attorneys . . . do is just . . . throw it up there. Let me throw out as many things as I can get out there" was a criticism of the defensive

16

strategy, not defense counsel personally, based on prosecutor's observations of a common defensive theory); *Battershell v. State*, No. 14-04-01115-CR, 2006 WL 1026919, at *3 (Tex. App.—Houston [14th Dist.] Apr. 20, 2006, pet. ref'd) (mem. op., not designated for publication) (holding prosecutor's argument wherein she argued that "I guess if you throw enough stuff maybe something will hit" was a proper attack on a defensive trial strategy, not defense counsel, and explaining a prosecutor "may properly question defensive theories").

Accordingly, we cannot say the trial court abused its discretion in this case. But even if the trial court had abused its discretion in overruling Appellant's objection to the prosecutor's argument, we cannot say that doing so had a substantial or injurious effect or influence in the jury's verdict determination. First, the prosecutor's comments were relatively mild, not substantially prejudicial. *Id. See Mosley,* 983 S.W.2d at 259-60 (referencing *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994)). And second, there was an abundance of legally sufficient evidence in the record to support the jury's verdict, as discussed above, thus any possible resulting harm would have been minimal.

Accordingly, we overrule Appellant's fifth and final issue.

## V. CONCLUSION

Having overruled Appellant's five issues on appeal, we affirm the trial court's judgment. Further, we note that while the trial court certified Appellant's right to appeal in this case, the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). The certification is defective and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX. R. APP. P 48.4, to send Appellant a copy of this opinion and this Court's

17

judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P 48.4; 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX. R. APP. P. 48.4.


LISA J. SOTO, Justice

March 30, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)